Argued March 7; reversed May 20; rehearing denied
September 9, 1930

# BLAIR *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(288 P. 204)

*Walter L. Tooze, Jr.,* of Portland for appellant.

*W. C. Winslow* and *W. W. McKinney,* both of Salem, for respondent.

RAND, J. This is an appeal by the state industrial accident commission from the judgment of the circuit court for Marion county, awarding plaintiff, under the workmen's compensation act, compensation for the death of her husband, Horace Newton Blair, who, while employed by O. N. Pierce & Co. as a workman and engaged in the work of constructing a bridge across the Rogue river at Gold Hill, contracted typhoid fever from which he died. After his death plaintiff, as the widow and beneficiary of said decedent, applied for compensation under section 6626, Or. L., but her application was denied upon the ground as stated in the order denying the same that decedent's death "did not result from an accidental injury arising out of and in the course of his employment." Upon the trial in the circuit court, the jury found that decedent died of typhoid fever which he contracted from drinking water from the Rogue river while at work upon the bridge, and that his contracting the disease while so employed was an accidental injury which arose out of and in the course of his employment. The commission, upon this appeal, while admitting that decedent died of typhoid fever, contends that there was no evidence to support the finding that the contracting of the disease was an accidental injury arising out of and in the course of his employment within the meaning of the statute.

It appears from the testimony that decedent was employed upon the bridge for four or five months prior to April 19, when he became ill of typhoid fever from which he died on June 19 following; that, while so employed, he and others working on the bridge drank the untreated water of the Rogue river; that this water contained sewage and bacillus coli in great numbers and was unfit and unsuitable for human consumption; that the city of Gold Hill pumped the water from the Rogue river but treated it, thereby rendering it safe

and suitable for human consumption; that no person using the city water became ill of typhoid fever; that decedent and two other employees at work upon the bridge who drank the untreated water while at work contracted typhoid fever; and that decedent died and the other two workmen recovered. It also appeared from the testimony that at a filling station in Gold Hill, a short distance from the bridge, arrangements had been made for the employees, while at work upon the bridge, to obtain city water for drinking purposes, and that buckets had been provided for carrying the water to the bridge for drinking purposes; that close to the bridge the railroad company operated a pump to pump water from the river into a tank for engine use; that between the pump and the tank a connection was made by which the water pumped from the river was conveyed through a hose to the bridge for use in mixing cement, and for other construction purposes; that decedent and some of the other workmen drank the water from this hose, or went down to the river and drank the water directly from the river.

There is practically no dispute as to the facts in this case and there was sufficient evidence to warrant the jury in finding that decedent contracted typhoid fever from drinking the untreated water of the Rogue river while he was employed in the construction of the bridge. But there is no evidence to show that the water was furnished to decedent for drinking purposes or that he was obliged to drink this water while engaged in work upon the bridge. Section 6626, Or. L., under which the right to compensation is claimed, reads as follows:

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and

in the course of his employment caused by violent or external means, he or his beneficiaries, or dependents, if the injury result in death, shall receive compensation according to the following schedule: * * *."

To entitle an injured workman to compensation under this statute, the workman must sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means. It is not sufficient that the workman shall have sustained a personal injury alone. It must have been an accidental injury. The element of accident must be added to the injury and the physical injury or harm resulting from an accident must have arisen out of and in the course of the employment. It is not sufficient that it should arise out of the employment or that it should arise in the course of the employment, for both must concur. The words used in the statute, "arising out of and in the course of his employment," are used conjunctively, not disjunctively, and both conditions must be satisfied before compensation can be allowed. That decedent contracted typhoid fever in the course of his employment is abundantly proven, but how can it be said that his contracting the disease arose out of his employment? The water was not furnished him for drinking purposes. He was not compelled to drink it. He had his choice of whether he would drink the treated city water or the untreated and contaminated water of the river. That he believed either would be safe to drink we have no doubt, but his drinking of the polluted water was no part of his work and no more arose out of his work than the eating of tainted food for his noonday lunch would have if he had eaten such food and contracted a disease therefrom. As was said by Buckley, L. J., in *Fitzgerald v. Clark,* 99 L. T. 101 (1 B. W. C. C. 197):

"The person entitled to compensation under the act is a workman who in an employment suffers personal injury by 'accident arising out of and in the course of the employment.' The words 'out of and in the course of employment' are used conjunctively, not disjunctively; and upon ordinary principles of construction are not to be read as meaning 'out of,' that is to say, 'in the course of.' The former words must mean something different from the latter words. The workman must satisfy both the one and the other. The words 'out of,' point, I think, to the origin or cause of the accident; the words 'in the course of' to the time, place, and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment": 2 Boyd, Workmen's Compensation, § 472.

The word "accident," as used in the statute, is taken in its popular and ordinary sense. It denotes or includes any unexpected personal injury resulting to the workman in the course of his employment from any unlooked for mishap or occurrence. Speaking generally, an accident means any unintended and unexpected loss or hurt apart from its cause; and, if the cause is not known, the loss or hurt itself would certainly be called an accident. It is also used to denote both the cause and effect. If the result is such as follows from ordinary means voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means: *Mut. Acc. Ass'n. v. Barry,* 131 U. S. 100 (33 L. Ed. 69, 9 S. Ct. 755); *Fenton v. Thorley,* (1903) A. C. 443; Boyd, Workmen's Com-

pensation, § 446. For a personal injury to arise out of and in the course of the employment, there must be some connection between the injury. and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be a causal connection between the employment and the injury which had its origin in a risk connected with the employment, and flowed from that source as a rational and natural consequence: *Larson v. Industrial Acc. Com.,* 193 Cal. 406 (224 P. 744). An injury may be said to

" 'arise out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment, but it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence": *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306); *Mueller Constr. Co. v. Industrial Board,* 283 Ill. 148 (118 N. E. 1028, L. R. A. 1918F, 891, Ann. Cas. 1918E, 808).

Obviously, the contracting of typhoid fever, due to decedent's voluntary drinking of untreated water

of the Rogue river, was not a risk of his employment. The only connection between the employment and the contracting of the disease was that both occurred at the same time and place but there was no causal connection between the employment and the disease. If, while at work upon the bridge, he had accidentally fallen into the river and involuntarily swallowed some of the water, thereby contracting typhoid fever, there would have been a causal connection between the employment and the contracting of the disease which caused his death. But under the undisputed and admitted facts of the case, there was no such connection. The case of *Vennen v. New Dells Lumber Co.*, 161 Wis. 370 (154 N. W. 640 L. R. A. 1916A, 273, Ann. Cas. 1918B, 293) is upon a different state of facts and arose under an entirely different statute. There, by accident, an employee, who drank impure water which had been negligently permitted to flow into certain water pipes which contained water furnished to the employees for drinking purposes, contracted typhoid fever from which he died. The question arose over the sufficiency of the complaint in an action against the employer for its negligent acts, and the statute provided for compensation "for injuries accidentally sustained by an employee," "while performing service growing out of or incidental to his employment." There is no reason why the legislature should not, if it had seen fit to do so, have included within the workmen's compensation act compensation for occupational diseases, or compensation for cases similar to the one involved here. Whether such cases should be provided for was a question for the legislature, not for the courts, and, since the case involved here was not included within the terms of the statute, the judgment must be reversed.

CoSHOW, C. J., McBRIDE and ROSSMAN, JJ., concur.