## STATE HIGHWAY COMMISSION AND STATE OF INDIANA
### *v.* SMITH.

[No. 14,195. Filed March 4, 1931. Rehearing denied July 3, 1931. Petition to reconsider ruling denying rehearing denied August 13, 1931.]

*James M. Ogden,* Attorney-General, *Charles E. Edwards,* Deputy Attorney-General, and *Owen S. Boling,* for appellant.

*Roscoe Hollingsworth* and *Carl Lambert,* for appellee.

LOCKYEAR, C. J.—This is an appeal from the award of the Industrial Board awarding the appellee compensation on account of the death of her husband, Perry Smith, who was employed by the State Highway Commission.

The deceased was engaged in the work of resurfacing

that part of state highway No. 39 between Lebanon and Frankfort when, it is alleged, the decedent, together with 14 other workmen, were furnished drinking water which was furnished by a water boy in the employ of the Highway Commission from a tile ditch. Said Perry Smith drank the water which contained bacillus coli; as a result, he became sick with gastroenteritis, which developed into cardiac arthritis, which resulted in his death.

Appellee contends that the ultimate facts of this case as shown by the evidence are as follows:

The decedent, Perry Smith, along with 13 or 14 other fellow workmen, was in the employ of appellant for a period of several weeks up until July 20, 1929; the son of the foreman was working as water boy, and had been furnishing to Smith and the other workmen drinking water taken from the mouth of a tile ditch which was connected directly to a septic tank which received the sewage from a farmer's house; the tile ditch also carried the surface run-off water which went into it from the territory which it served. It was proved that an examination by the State Board of Health disclosed that water from tile ditches in Indiana, on account of the populated condition of the state, contains intestinal bacteria and is generally unsafe for drinking purposes. The evidence discloses that Smith became sick on July 20, and, on the same date, the following fellow workmen also became sick: John Ross, Atla Goldsberry, Guy Goldsberry and Kenneth Kelley. They all described practically the same symptoms of vomiting and running off at the bowels. Their drinking water came from a common source, but their food came from different sources, and they lived in different localities. The diagnosis of the attending physician was that Smith was suffering from gastroenteritis, which developed into pericarditis and caused his death, that the gastro-

enteritis was a germ infection of the intestinal canal, and that the germ causing the infection had to enter through the medium of either food or drink. It is disclosed by the State Health Board's examination of the ditch water that the water contained bacilli coli, which are usually accompanied by other pathogenic organisms; that the water was unsafe for drinking purposes. Aside from the analysis of the water, the fact that several men became sick on the same day and after drinking the water, together with the facts that the ditch carried the effluent from the septic tank and the surface run-off of the neighborhood, would be sufficient to prove that the water was polluted with dangerous intestinal organisms, and that Smith's sickness was a direct result of drinking the water, which appellee contends was sufficient evidence to support the board's finding.

It is the contention of appellants: (1) That the record does not show that death of appellee's husband, Perry Smith, was a death by accident within the meaning of our Workmen's Compensation Act; (2) the burden was upon the appellee to show that the death of her husband for which she was awarded compensation was a death by accident arising out of and in the course of his employment; (3) there is no competent evidence in the record to show that the water furnished appellant's employees for drinking purposes contained any bacillus coli, that the only evidence offered on this subject was the analysis of a sample of water obtained by a witness who knew nothing about where the drinking water had been obtained, which sample was taken, not from the tile ditch, but from a hole at the end of the tile, and taken more than 20 days after the decedent last worked for the appellant. This evidence was objected to and it was error to admit it; (4) before appellee is entitled to compensation under our Workmen's Compensation Act, she must show that the death of her husband was a

"death by accident arising out of and in the course of his employment with appellant"; (5) it is also clear that a compensable injury under our law does not include "disease in any form" except as it shall result from the injury.

Appellant contends that no sufficient facts are shown by the evidence in this cause to sustain any legitimate inference that the death of appellee's decedent was the result of drinking water furnished by appellant to its employees; that there is no competent evidence shown by the record in this cause that the decedent drank any water furnished by appellant; that there is no competent evidence in the record to show that the water furnished by appellant to its employees on July 18 and 19, 1929, contained any pathogenic organisms of a disease producing type, or of any other type; that there is no evidence in the record to show that the water furnished appellant's employees on July 20, 1929, was other than the purest of water; that the admission in evidence, over appellant's objection, of the analysis of a purported sample of water taken from a "hole" at the end of two tile ditches, was error, but, in no event, does such analysis establish that the water furnished by appellant to its employees contained any pathogenic organisms capable of producing disease, and, therefore, contends the evidence was for this reason insufficient.

The facts in the case of *Wasmuth-Endicott Co.* v. *Karst* (1922), 77 Ind. App. 279, 133 N. E. 609, are very similar to the case at bar. In that case, the appellee, with other workmen, was in the employ of appellant in its cabinet factory in Ft. Wayne, Indiana; it furnished its employees, while at work, drinking water through pipes from a well in its factory; without appellee's knowledge, the water became contaminated by seepage from a toilet in said factory, and the appellee became infected with typhoid fever from the

water. Batman, P. J., speaking for the court, says, "it is clear that the entering of typhoid germs into appellee's intestines by reason of drinking the polluted water furnished him by appellant for that purpose while in its employ may rightfully be termed an 'accident,'" citing *Dove* v. *Alpena, etc., Co.* (1917), 198 Mich. 132, 164 N. W. 253; *Vennen* v. *New Dells Lumber Co.* (1915), 161 Wis. 370, 154 N. W. 640, L. R. A. 1916A 273, Ann. Cas. 1918B 293; *Monson* v. *Battelle* (1918), 102 Kans. 208, 170 Pac. 801. The court holds that such accident arose out of the employment and sustained the award of the Industrial Board. To the same effect is the case of *Rissman & Son* v. *Industrial Comm.* (1926), 323 Ill. 459, 154 N. E. 203, where workmen drank water which was contaminated from seepage from a privy vault, from which source said workmen were inoculated with typhoid germs. In that case, as in this, the sufficiency of the proof was questioned. There was no specific statement that the deceased drank the water provided for use; the evidence was that all the employees drank the water furnished, and the Supreme Court upheld the award of the Industrial Commission, saying it is the law that it is the province of the Industrial Commission to draw reasonable inferences from evidentary facts. The court held directly that the death from the facts proved was an accident, citing *Christ* v. *Pacific Mutual Life Ins. Co.* (1924), 312 Ill. 525, 144 N. E. 161, 35 A. L. R. 730.

Appellee's statement as to the facts proved is substantially correct. Evidence was introduced of a farm house equipped with modern conveniences and that water ran from the toilets in the house into a septic tank outside, which was built in 1913, and drained out into a tile, and that the water eventually led to the tile where witnesses testify that the boy obtained water for the men to drink.

E. H. Parks, a chemist in charge of the laboratory of

the State Board of Health, in charge of water tests, was furnished with a sample of water from the place where it was testified that the water boy obtained the water. The water was procured 20 days after the time in question when it is alleged the deceased drank of the polluted water.

The chemist found that the water showed bacilli coli, and was unfit to drink. He testified further: "The bacilli coli is a group of organisms, the majority of which are known to be of intestinal origin." He says: "We have not found any surface water in Indiana which is safe for drinking without treatment. These bacteria could be carried down a tile ditch in water a mile and a half and live" (which is about the distance from the farm house to the place where the water was taken).

Dr. O. C. Higgins, a physician, in Lebanon, Indiana, testified that Perry Smith came to see him on July 20, 1929, and died on July 27. Smith had a temperature, and his pulse was 120; abdomen swollen and very tender, and was evidently a very sick man. Smith said he had a diarrhea and had been vomiting. The physician said he found that germ life of some variety had attached to the mucus parts of the intestinal canal and the patient's body was attempting to throw off the infection.

The immediate cause of his death was pericarditis, an infection of the heart. The same infection he had when he first examined the patient on Saturday the 20th of the month, which, at that time, he diagnosed as "gastroenteritis." The witness says: "The germ enteritis was the primary infection and, after the diarrhea started in the intestinal canal, the germ got across and the germ was kept flowing and wound in and about the heart and proceeded to cause infection there also." The Industrial Board are the triers of the facts in cases of this kind, and where, as in

this case, 14 or 15 men are working together and it is shown by expert evidence that a workman can be affected by either impure food or impure water, and five or six of them are stricken with a malady from a common source, to wit, water, the board had the right to find as an ultimate fact that it was the polluted water that caused the death in question.

In the light of the authorities cited above, we hold that the evidence is sufficient to sustain the award.

The award of the Industrial Board is therefore affirmed.

Kime, J., dissents.