In Banc.
On or about the 22d day of April, 1930, plaintiff was in the employ of the State Highway Commission as a chainman in a surveying crew which was engaged in surveying the highway known as the Oregon-Washington Highway in Umatilla county, Oregon.
While at work, in the capacity mentioned, at a place about two miles west of Milton, Oregon, plaintiff suffered an abrasion of the heel of his right foot. Within ten days, said abrasion became extremely sore. Shortly thereafter blood poisoning developed in and around the area where said abrasion first appeared. This later spread to plaintiff's joints and limbs.
On the ____ day of April, 1930, plaintiff filed with the State Industrial Accident Commission, hereinafter referred to as the Commission, a claim for compensation under the Workmen's Compensation Act. On May 23, 1930, the Commission entered an order denying plaintiff's claim for the reason that the condition complained of was not the result of an injury by violent or external means. On June 16, 1930, plaintiff filed an application for rehearing with the Commission. On June 17, 1930, the Commission entered an order denying said application for the reason that plaintiff did not sustain personal injuries by accident arising out of and in the course of his employment caused by violent and external means. *Page 186 
Plaintiff appealed to the circuit court from the order of the Commission denying his claim. The Commission and its individual members filed a demurrer to plaintiff's initial pleading upon that appeal.
For a proper understanding of the questions presented by the demurrer, it should be said that the facts above outlined appear in plaintiff's petition on appeal; and it is also therein alleged:
"That part of the duties of carrying the chain for the surveying crew required a great deal of walking upon all types of lands and rocks; that at the time the abrasion appeared on appellant's foot, the appellant was under the supervision of the head of the surveying crew and at that time was compelled to walk over rocky surfaces and land that had been recently plowed; that these rocky surfaces and cultivated lands were extremely difficult to walk upon; that the employment that appellant was pursuing necessitated the use of shoes constructed of extremely heavy leather; that prior to entering into said employment the appellant was not accustomed to wearing shoes or boots of this type of leather; that the rubbing of the leather of the heavy shoes against the appellant's heel caused the accident above described."
Defendants' demurrer to plaintiff's petition was overruled. Defendants declined to plead further and from the order of the circuit court reversing said orders of the Commission entered on May 23, 1930, and June 17, 1930, and remanding the cause to the Commission to fix the compensation to be allowed plaintiff in accordance with the findings of fact made by the circuit court and in accordance with the statutory schedules, defendants appeal.
To the writer, the questions presented on this appeal seem to be decided in the case of Dondeneau v. State Industrial AccidentCommission, *Page 187 119 Or. 357 (249 P. 820, 50 A.L.R. 1129). In that case, as in the case at bar, the Commission urged that the injury was not sustained by accident. The strong dissenting opinion in the Dondeneau case, written by the late Mr. Justice BURNETT, ably supports the defendants' position in this case. The majority of the court, as then constituted, held that the claimant therein had sustained a compensable injury. In that case, it was shown that, sometime during four days of fighting fire, the heat, smoke, and overexertion attendant thereupon irritated claimant's left eye; that, thereafter, inflammation arose therein developing into a case of glaucoma. There the principles of law governing casualty insurance were adopted by this court as applicable in cases of this character.
The illustration employed by Mr. Justice COSHOW, in the Dondeneau case, in discussing the distinction between the case of an injury caused by accidental means and the one wherein the result only is accidental, is equally applicable to the facts in the case at bar:
"A person accidentally scratches his hand on his tie pin which unknowing to him protrudes beyond his tie. The scratch occurs by chance. It is a mishap. In itself it is trivial but owing to some unforseen and unknown circumstances blood poisoning results and death follows. The insurer would be liable under the policy. Another man intentionally uses his tie pin to remove a sliver in his hand or to open a blister and blood poisoning unexpectedly results causing the insured's death. His beneficiaries cannot recover under the policy because he intentionally used the pin in the way and manner he did."
In the case at bar no one would think of saying that plaintiff made use of heavy footwear to cause an abrasion, or that at any time he intended to cause an abrasion. The rubbing of the leather in the case at bar, *Page 188 
like the contact of the smoke in the Dondeneau case, was the cause of an unintended and unexpected result.
In the case at bar that result was an abrasion. In the Dondeneau case it was irritation and inflammation of the eye. In both cases the injuries were sustained by accident.
The case of Western Commercial Travelers' Association v.Smith, 85 Fed. 401 (40 L.R.A. 653, 56 U.S. App. 393), presents a discussion of the question here involved. Freeman O. Smith held a certificate of insurance against accident issued by plaintiff in error for the benefit of Sarah Smith, defendant in error. Said Freeman O. Smith died from blood poisoning caused by an abrasion of the skin of one of his toes, which abrasion was the result of the friction of one of his shoes against his foot.
We quote from that case:
"The only question remaining, therefore, is whether or not the abrasion of the skin of the toe was produced by accidental means. * * * The contention is that it was not accidental. The significance of this word `accidental' is best perceived by a consideration of the relation of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequence of means is the consequence which ordinarily follows from their use, — the result which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the *Page 189 
other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means. Chicago St. P.M. O.R. Co. v. Elliott, 12 U.S. App. 381, 386, 387, 389, 5 C.C.A. 347, 350, 351, 353, 55 Fed. Rep. 949, 952, 953, 955, 20 L.R.A. 582.
"Was the abrasion of the skin of the toe of the deceased the natural and probable consequence of wearing new shoes? It must be conceded that new shoes are not ordinarily worn with the design of causing abrasions of the skin of the feet, and the trial court has found that the abrasion upon the toe of the deceased was produced unexpectedly, and without any design on his part to cause it. An abrasion of the skin, certainly, is not the probable consequence of the use of new shoes; for it cannot be said to follow such use more frequently than it fails to follow it. Nor can such an abrasion be said to be the natural consequence of wearing such shoes — the consequence which ordinarily follows, or which might be reasonably anticipated. How, then, can it fail to be the chance result of accidental means — means not designed or calculated to produce it? If the deceased, without design, had slipped, and caused an abrasion of his skin, as he was walking down the street, or had punctured the skin of his foot by stepping on a nail in his room, or had pierced it with a nail in his shoe as he was drawing it upon his foot, there could have been no doubt that these injuries were produced by accidental means; and it is difficult to understand why an abrasion of the skin, produced unexpectedly and without design, by friction caused *Page 190 
by wearing a new shoe, does not fall within the same category. * * * The abrasion of the skin of the toe of the deceased was unexpectedly caused, without design, on his part, by unforeseen, unusual, and unexpected friction in the act of wearing the shoe which preceded the injury. It was not the natural or probable consequence of that act, and it was, therefore, produced by accidental means."
The effect of defendants' demurrer is to admit that the abrasion on plaintiff's heel was caused by external means, because it is alleged in the complaint that it was caused by the rubbing of the leather upon the foot, and, treating the term "violent" as meaning that which is characterized by physical force, it cannot be gainsaid that the abrasion in question was the result of violent means. The test lies not in the degree of violence.
Defendants urge that the injury sustained by plaintiff did not arise out of his employment. In the case of Blair v. StateIndustrial Accident Commission, 133, Or. 450 (288 P. 204), Mr. Justice RAND, speaking for the court, quotes approvingly from McNicol's Case, 215 Mass. 497 (102 N.E. 697, L.R.A. 1916A, 306), wherein it is said that an injury "arises `out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises `out of' the employment. But it excludes an injury which cannot fairly be traced to the employment *Page 191 
as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."
In the opinion of the writer, there was a causal connection between the peculiarly difficult and onerous character of the walking required of plaintiff in the performance of his duties as chainman and the resulting abrasion on his heel. Walking upon all types of land and rocks, over rocky surfaces and land that had been recently plowed, was required of plaintiff. It was a service peculiar to his work as chainman and involved a hazard to which he would not necessarily have been exposed apart from his employment.
The character of the work required the use of heavy shoes. That being so, it is of no moment that it is not alleged that plaintiff was commanded or requested by his employer to wear any particular kind of shoe. That a similar abrasion might be produced in other employment, and under other and varying circumstances, does not alter the fact that the danger of its being caused by the character of the work required of plaintiff in his employment as surveyor's chainman, as set forth in plaintiff's complaint, was peculiar to that employment.
In the foregoing discussion, the Workmen's Compensation Act has been construed liberally. Such a *Page 192 
construction has been approved by this court: Lamm v. SilverFalls Lumber Co. 133 Or. 468, 478 (277 P. 91, 94), and authorities there cited.
As well said by Mr. Justice ROSSMAN, in the case last cited: "One of the purposes of the Workmen's Compensation Acts is to broaden the right of employees to compensation for injuries due to their employment": 133 Or. 468, 490 (286 P. 527, 530).
The judgment of the circuit court should be affirmed, and it is so ordered.
BEAN, C.J., BROWN and BELT, JJ., concur.
RAND, J., dissents.
ROSSMAN and CAMPBELL, JJ., did not participate in this opinion. *Page 193