Submitted on brief January 26; affirmed February 14, 1933

# BANISTER v. STATE INDUSTRIAL ACCIDENT COMMISSION
### (19 P. (2d) 403)

I. H. *Van Winkle*, Attorney General, and *Miles H. McKey*, Assistant Attorney General, for appellant.

*B. A. Green*, of Portland, for respondent.

RAND, C. J. In March, 1931, plaintiff, while employed in cutting brush for the city of Portland, inadvertently came into contact with poison-oak in ignorance of what it was and thereby sustained an injury which resulted in his total disability for a period of

about nineteen days. He applied to the State Industrial Accident Commission for compensation but his claim was rejected upon the single ground that "the condition suffered was not due to an accidental injury arising out of and in the course of his employment". He appealed therefrom to the circuit court for Multnomah county, where a trial was had by the court without the intervention of a jury and, from a judgment entered therein setting aside the commission's order and awarding compensation, the commission has appealed.

The principal contention urged by the commission is that plaintiff did not suffer an accidental injury for the reason that poison-oak poisoning, which is termed by the medical profession as "dermatitis venenata", is an idiopathic and not a traumatic disease and, therefore, not compensable under the Workmen's Compensation Act of this state. In support of this contention, the commission cites *Iwanicki v. State Ind. Acc. Comm.*, 104 Or. 650 (205 P. 990, 29 A. L. R. 682); *Lerner v. Rump Bros.*, 241 N. Y. 153 (149 N. E. 334, 41 A. L. R. 1122); *Taylor v. Swift & Co.*, 114 Kan. 431 (219 P. 516); *Blair v. State Ind. Acc. Comm.*, 133 Or. 450 (288 P. 204); *Huntley v. State Ind. Acc. Comm.*, 138 Or. 184 (6 P. (2d) 209).

In the first case cited, Iwanicki, the claimant, during the period of seven weeks' employment, had contracted lead poisoning from the practice of putting lead-coated nails in his mouth while working as an upholsterer, and it was held that the poisoning resulting therefrom was an occupational disease for which no compensation is allowable under our statute. In that case the court quoted with approval from an excerpt in Corpus Juris, which stated that: "An idiopathic as

distinguished from a traumatic disease cannot be regarded as an injury by accident; but on the other hand the fact that an injury may be classed as a disease does not take it out of the operation of a compensation act''. The commission relies upon that clause of the excerpt as conclusive in this case, but it will be noted that, in defining what constitutes an idiopathic disease within the meaning of that excerpt, the writer says: ''An idiopathic disease in the sense in which the term is used in the discussion of the cases arising in this connection is one which develops gradually or at least imperceptibly and, while it may be attributable to external conditions, is also dependent in part on conditions inherent in the individual''.

The evidence in this case clearly shows that contact with poison-oak or poison-ivy by persons who are susceptible to such poisoning causes an acute inflammation of the skin due to some acrid or poisonous substance of the shrub or plant and produces the disease known as dermatitis venenata, which develops in one or two days after the person has been exposed thereto and, in many instances, causes a total disability for a short time thereafter. It, therefore, is not a disease which develops gradually or imperceptibly, and, while it is attributable to external conditions, it is not dependent upon conditions inherent in the individual, except that some persons are not susceptible thereto. Hence, it does not fall within the definition of an idiopathic disease in the sense used in Corpus Juris as a disease not compensable under the statute. In respect to this phase of the case, the Lord Chancellor said in *Brintons v. Turvey,* App. Cas. (1905) 230:

''I think in popular phraseology, from which we are to seek our guidance, it (the act) excludes, and was

intended to exclude, idiopathic disease; but when some affection of our physical frame is in any way induced by an accident, we must be on our guard that we are not misled by medical phrases to alter the proper application of the phrase 'accident causing injury' because the injury inflicted by accident sets up a condition of things which medical men describe as disease. Suppose in this case a tack or some poisoned substance had cut the skin and set up tetanus. Tetanus is a disease; but would anybody contend that there was not accident causing damage?''

The above was quoted with approval in *Railway Mail Ass'n v. Dent,* 213 Fed. 981 (L. R. A. 1915A, 314).

In the Blair case, supra, claimant's intestate while in the course of his employment, had contracted typhoid fever by voluntarily drinking river water containing bacillus coli, from which he died. The water had not been furnished by his employer and he had exercised his choice of drinking it instead of other water furnished by the city which was equally available to him and not contaminated. Under those facts, it was, in effect, held that, since the water which caused his death had not been furnished by his employer, his drinking of it, although in ignorance of the danger, was not a special hazard incidental to or arising out of his employment within the meaning of the compensation act. To the same effect see *Ames v. Lake Independence Lumber Co.,* 226 Mich. 83 (197 N. W. 499). Had the water been furnished by his employer and had he drunk it in ignorance of the danger, he would have been entitled to compensation under the doctrine announced in *Aetna Life Ins. Co. v. Portland Gas & Coke Co.,* 229 Fed. 552 (L. R. A. 1916D, 1027); *Frankamp v. Fordney Hotel,* 222 Mich. 525 (193 N. W. 204); *John Rissman & Son v. Ind. Acc. Comm.,* 323 Ill. 459 (154

N. E. 203) ; *State v. Smith,* 93 Ind. App. 83 (175 N. E. 146) ; *Vennen v. New Dells Lumber Co.,* 161 Wis. 370 (154 N. W. 640, L. R. A. 1916A, 273, Ann. Cas. 1918B, 293) ; *Scheerens v. Edwards & Son,* 232 N. Y. Supp. 557.

In *Lerner v. Rump Bros.,* supra, Lerner's employment required him to enter and remain for short periods of time in a room used for refrigeration. This resulted in a chill followed by a cold which developed into certain diseases causing his death. In denying compensation, the court said:

"* * * The exposure, although occurring at a definite time and place, was not catastrophic or extraordinary. It was like the exposure to drafts when one is heated while at work or to the change between the cold and wet outside and the warmth inside, which is not unfrequently encountered by the workman after coming to his work in inclement weather. Such contacts of the body with the draft or with the changes of temperature are natural and normal, and often unavoidable in the conduct of a business. A resulting cold would present itself as a disease and not as an accident. While it may be difficult to make nice and exact discriminations between disease as an accidental injury and disease which is neither accidental nor an injury in the common acceptance of the terms, it is not difficult to distinguish a case of ordinary exposure resulting in a cold from a case of emergent, prolonged exposure. The definite event here is the change from a hot room to a cold one, as if one should step out of a hot room into the cold in the winter time without adequate protection. To call the sequent cold an accidental injury would be to distort the fair meaning of the statute and the underlying principle of compensation cases".

In *Taylor v. Swift & Co.,* supra, the claimant had been engaged in working in and out of a meat cooling

room and the alternating heat and cold caused an illness followed by paralysis. In denying compensation, the court said:

"* * * there must be some accident, some mishap, some untoward, unexpected event arising out of and in the course of the employment from which the injury is occasioned".

■■ In order to entitle a workman to compensation under the Workmen's Compensation Act, he must have sustained a personal injury by accident arising out of and in the course of his employment, caused by violent or external means and resulting in his disability. Section 49-1814, section 49-1827, Oregon Code 1930. In the instant case, the disease contracted by claimant through contact with poison-oak brush was not an occupational disease in the sense that it was the natural and unavoidable result of the employment. Plaintiff's contact with the poison-oak brush happened by chance. He was in ignorance of its character. The contact was involuntary and unintentional upon his part and, although it resulted from his conscious act, the result was unexpected. This contact arose out of and in the course of his employment and resulted in his disability. It was not an accident caused by violence but it was caused by external means. The method used in cutting the brush was for the workman to hold the brush in one hand while he cut it off near the ground with an axe held in the other hand and it was then carried to a brush pile and burned. While so working, plaintiff sustained the injury complained of and there was present all the elements essential to compensation under the statute.

That disability resulting to a workman from contact with poison-ivy is within the meaning of compensa-

tion acts and compensable has been held in the following cases and decisions: *Dent v. Railway Mail Ass'n,* 183 Fed. 840; *Railway Mail Ass'n v. Dent,* supra; *Plass v. Central New England Ry. Co.,* 169 App. Div. 826 (155 N. Y. Supp. 854); *Sharon v. Town of Boonville,* 32 State Dept. Rep. (N. Y.), 545; and *Decision No. 8382, Industrial Accident Commission of Minnesota.* The effect of poisoning from poison-oak and poison-ivy upon the human skin and the diseased condition resulting therefrom are shown to be identical. And, hence, where a workman sustains an injury therefrom arising out of and in the course of his employment, he is as much entitled to compensation in the one instance as in the other.

For these reasons, the judgment is affirmed.