Argued July 24; affirmed July 30; rehearing denied
September 10, 1935

# DEMAGALSKI *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(47 P. (2d) 947)

*F. C. Heffron,* of Eugene, for appellant.

*Miles H. McKey,* Assistant Attorney-General (I. H. Van Winkle, Attorney-General, Victor R. Griggs, Assistant Attorney General, on the brief), for respondent.

KELLY, J. Lawrence Demagalski, deceased, was foreman of the State Game Farm near Corvallis in Benton county.

At said farm large numbers of pheasants were confined in pens. On the 14th day of September, 1933, said Demagalski arose at 5 a. m. and went out to the pens to catch and crate pheasants for shipment. In about half an hour said Demagalski returned to the house and shortly thereafter went back to the pens. At about 6 a. m. his wife, the claimant herein, called him to breakfast and he answered. He did not come to breakfast and his wife called again. He then asked her to come to him, which she did. He explained to her that he was stooping over catching birds, had become dizzy and had a headache. His wife assisted him to the house, put him to bed and called a doctor. The doctor diagnosed his condition as arteriosclerosis, high blood pressure, and partial paralysis due to cerebral hemorrhage. A week later he died.

The only question is whether his death was the result of a personal injury by accident caused by violent or external means. It is conceded that he was working under the terms of the Workmen's Compensation law.

The case was tried to the court without a jury. Claimant contends that the judgment rendered by the trial court is not supported by the findings of fact.

Those findings, so far as pertinent to the question involved, are:

## "II

That his (Demagalski's) duties under such employment required him to catch pheasants in pens and coops, the pens being large enough to permit his entry and movement conveniently, the coops being small and low and requiring him to stoop, insert his arm, and seize the birds. His duties also required him to crate the birds, and in so doing he was required to handle the crates, weighing up to sixty pounds. While thus engaged in performing his duties, he necessarily employed agility and rapid action. He used a net on a pole (which was received in evidence) with which to entrap the birds in the pens. Having caught several birds in the larger pens, he stooped over and caught more birds in the low coops. His activity, as in any such work, resulted in increased bodily temperature and more rapid breathing and heart action. His stooping, as in all such cases, caused what is ordinarily known as a rush of blood to head. The temperature, breathing, heart action and blood pressure were increased in the sense that they were greater than they would have been had he remained quiet. If Demagalski had remained in bed he probably would not have suffered injury that day. Unknown to himself, Lawrence Demagalski suffered from high blood pressure and hardening of the arteries to a degree amounting to a diseased condition which was in and of itself dangerous to life. This condition existed previous to and at the time of his injury.

## III

That on the 21st day of September, 1933, he was engaged in performing the said duties at the State Game Farm at Corvallis, Benton County, Oregon. While thus engaged, or soon thereafter, and somewhere within an hour after commencing to catch and crate the pheasants, he was found collapsed on one of the coops and unable to walk. While engaged in the aforesaid work, or within a few minutes thereafter, he suffered a cere-

bral hemorrhage from which he died. The increased activity constituted a releasing and proximate cause which, acting concurrently with his diseased condition, produced hemorrhage and death. Such activity in a well man would have had no injurious effect whatever. In his diseased condition the injury followed as a result of the activity.

### IV

On the said 21st day of September, 1933, while so engaged in performing said duties, Demagalski was performing his ordinary and usual duties in an ordinary and usual manner. With the exception of the cerebral hemorrhage itself, nothing unusual or unexpected happened. No mischance, slip or mishap occurred in doing the acts themselves, said acts being all voluntary, intentional, and done in the manner intended, by ordinary means voluntarily employed. No physical force, object or influence outside of his own physical person acted upon him. His own physical effort did not bring him in contact with any external object, force or influence. The only force used or exerted was his own, with the exception of what we call the force of gravity, operating while crates, birds and net were being lifted at various times."

The learned trial judge, among other things, found, as a conclusion of law,

"That Lawrence Demagalski, deceased, did not sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means as alleged in plaintiff's complaint."

■■ In determining whether this conclusion was proper, we must bear in mind that this court is committed to the line of cases which hold that where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental

means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen: *Dondeneau v. State Industrial Accident Commission,* 119 Or. 357 (249 P. 820, 50 A. L. R. 1129).

In the case just cited, it being a case based upon a claim for injury to an eye while claimant was fighting a forest fire, this court called attention to the fact that it could be inferred that the injured eye received an unusually strong blast of some gas aggravated by ashes or cinders and intense heat.

Claimant herein cites *Elford v. State Industrial Accident Commission,* 141 Or. 284 (17 P. (2d) 568). There the injury consisted of a rupture of a cancerous growth in the abdomen. This court held that from all the circumstances and testimony, the jury could very well draw the inference that the injury was accidental and that it was not error to submit the cause to the jury under instructions to which there was no exception.

*Huntley v. Oregon State Industrial Accident Commission,* 138 Or. 184 (6 P. (2d) 209), also cited by claimant, is based upon a claim because of an abrasion on the heel of claimant. This court held that the rubbing of the leather of a heavy shoe was the accidental cause of the abrasion.

In the case of *Armstrong v. State Industrial Accident Commission,* 146 Or. 569 (31 P. (2d) 186), there was evidence tending to show that decedent's injury was due to some automobile wheels falling from a pile and hitting him upon the back of the neck and shoulders.

In the case at bar there is an entire absence of any evidence of an accidental cause of decedent's death. He was engaged in catching and crating pheasants. That is what he intended to do and that is what he did. There is no evidence that anything fell upon or against

decedent or that anything in use by him failed to function in its normal and customary manner.

We conclude that the learned and experienced trial judge committed no error in his conclusions upon the findings rendered, and that such findings support the judgment of dismissal.

Cases are cited by claimant from the jurisdictions of District of Columbia, Minnesota, Kansas, Colorado, Utah, Maine, Illinois, California, Oklahoma, Idaho, and Washington.

It would unreasonably prolong this opinion to analyze each of these cases. Suffice it to say, that the statutes of these sister jurisdictions are not like the statute of Oregon.

The Longshoremen and Harbor Workers' Act effective in the District of Columbia (44 U. S. Stat. at Large, Ch. 509, § 2, 45 Id. Ch. 612), and the Kansas (Rev. St. of Kan. 1923, § 44-501), Utah (Rev. Stat. of Utah, 1933, §§ 42-1-42 (5), 42-1-43), Maine (Rev. Stat. of Maine, 1930, Ch. 55, §§ 8 and 17), Illinois (Illinois Stat. Ch. 48, Par. 201 and 208), Idaho (Idaho Code, 1932, §§ 43-1001, 43-1002 and 43-1810) and Oklahoma (Oklahoma Stat. 1931, § 13351), statutes grant compensation for accidental injuries arising out of and in the course of employment.

The California statute compensates for any injury arising out of and in the course of employment and proximately caused thereby: General Laws of California, 1931, Act. 4749, §§ 3(4) and 6(a).

The Washington statute protects against personal injuries sustained in the course of employment unless deliberately self-inflicted or sustained in the commission or attempted commission of a crime. There, "injury" is defined as a sudden and tangible happening of a traumatic nature producing a prompt result and

occurring from without: Remington Rev. Stat. of Wash. 1931, §§ 7675, 7679 and 7680.

Our statute differs from the statutes of all of the last above-mentioned jurisdictions in that it covers only personal injuries by accident  *  *  *  caused by violent or external means.

The Colorado statute makes no reference to violent or external means, but simply covers personal injuries proximately caused by accident arising out of and in the course of employment unless intentionally self-inflicted: Comp. Laws of Colorado, 1921, § 4389.

The Minnesota statute is more nearly like ours than the others above mentioned in that it covers personal injury or death caused by accident arising out of and in the course of employment and defines "accident" as an unexpected or unforeseen event happening suddenly and violently with or without human fault and producing at the time injury to the physical structure of the body: Minnesota Code 1927, § 4326, and subdivs. (h) and (j) of § 4326.

The distinction between the rule in effect in Oregon, as stated in the Dondenau case and recognized in subsequent Oregon cases, and the ground upon which compensation is granted where the injury is not the result of accident caused by violent or external means, is clearly discernible from a consideration of the following statement in *Carroll v. Industrial Commission,* 69 Col. 473 (195 P. 1097, 19 A. L. R. 107):

"Our statute uses the expressions, 'personal injury or death accidentally sustained,' and 'injury proximately caused by accident,' in providing for what injuries or deaths compensation shall be allowed. By the term 'injury' is meant, not only an injury the means or cause of which is an accident, but also any injury which is itself an accident. The expressions above quoted are the equivalent of 'injury by accident,' which is fre-

quently used in the decisions. The word 'by' may mean 'through the means, act, or instrumentality of'. 9 C. J. 1109. Therefore 'injury by accident' and 'injury caused by accident' are terms or expressions which can be used interchangeably. In a discussion of the former, it is said in 25 Harvard Law Review, 340: "Since the case of *Fenton v. Thorley* [1903; H. L. A. C. 443, 72 L. J. K. B. N. S. 787, 52 Week. Rep. 81, 89 L. T. N. S. 314, 19 Times L. R. 684, 5 W. C. C. 1,] nothing more is required than that the harm that the plaintiff has sustained shall be unexpected.   *   *   *   It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing.'

" 'This is the rule followed in *Fidelity Etc. Co. v. Industrial Accident Commission of California,* 177 Cal. 614, 171 Pac. 429, L. R. A. 1918F, 856. It was there stated that the current of authority is that 'unforeseen, unexpected, and unintended injuries to employes have been classed as "accidents" and held sufficient to justify awards.'

"For the reasons above indicated, we are of the opinion that the record shows that the death of Joseph Carroll resulted from an 'injury proximately caused by accident,' and that, therefore, his dependents are entitled to compensation."

As stated, Oregon is committed to the doctrine that to be compensable it is necessary for the injury to have been caused by accidental means; it is not sufficient that the result should have been accidental.

Oregon is not entirely alone in holding this view. In a logical, carefully reasoned and convincing opinion by Judge Lockwood, the supreme court of Arizona has taken the same position.

We quote therefrom:

"We come then to the interpretation of the phrase 'injured * * * by accident' as used in the Compensation Act, and particularly of the word 'accident.' In many of the states, such as California, Iowa, and others, the word 'injury' or 'injured' is used alone, and not directly qualified by the word 'accident' or 'accidental'. The decisions from those states are therefore useless in aiding us. The decisions from the states with acts like ours are in hopeless conflict as to whether 'accident' refers solely to the cause of an injury or is synonymous with the injury itself. The word 'injured' when used as a participial adjective as it is here, is defined by Webster as 'damaged.' The word 'accident' is, by the same authority, 'an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.'"

"It is obvious that while 'injured' always implies a result, the word 'accident' may mean either a cause or a result, and which it is must be determined by the context. The preposition 'by' which is found between the word 'injured' and the word 'accident', supplies the answer. Used as it is, it can only mean 'by medium of, in consequence of, or through the agency of,' and the 'accident' is therefore the cause of the injury." *Pierce v. Phelps Dodge Corporation* (Ariz.), 26 P. (2d) 1017.

For the reasons herein stated, the judgment of the circuit court is affirmed.