Argued October 8; affirmed October 23, 1936

RYAN *v.* STATE INDUSTRIAL ACCIDENT
COMMISSION

(61 P. (2d) 426)

*T. Walter Gillard,* of Portland (William P. Lord, of Portland, on the brief), for appellant.

*Victor R. Griggs,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondent.

ROSSMAN, J. The plaintiff entered the employ of Libby, McNeill & Libby in the year 1929. Her principal duty consisted of peeling pears and apples. Her employment was seasonal and extended over a period annually of six to seven months. In 1934 she was again in the employ of this concern, but her employment ceased on November 7, the end of the season for canning pears and apples. November 10, 1934, she felt an aching pain in her left hand and observed a red rash breaking out on three fingers of that hand. The condition grew worse and in December, 1934, it was necessary for her to submit to surgical treatment. In April, 1935, further surgical treatment was necessary. The evidence indicates that a residue of the arsenic spray which the orchardist had used remained upon many of the apples and pears which the plaintiff peeled. In performing her work the plaintiff's hands frequently were in water and this caused them to become soft. In each of the years 1930, 1931, 1932 and 1933 the plaintiff suffered from a rash similar to that which she experienced in November, 1934. Other employees who worked alongside of her experienced similar troubles, as will be observed from the following excerpts taken from the plaintiff's testimony: "Different times we would have a rash, breaking out, and we would use the treatments of Epsom salts and that would take it out and cure it up again, but nothing serious. * * * There was a rash would form at different times, but the nurse would take care of it and give us lotions for it. * * * Well, nothing serious, excepting this rash, with the hands beginning to feel all sore. Put them in those solutions, Epsom salts and a soda solution, and that would counteract the irritation". After she had given this testimony she was asked whether she had not experienced "trouble from those poisons, whatever

they were, every season you worked there"? to which she replied, "Well, more or less; I think we all did". She was unable to specify exactly the cause of the disorder which she experienced in November, 1934, but swore: "It is all these different poisons that the fruits are sprayed with and the salt and the germs that are on the fruits". She testified that at the time when the rash developed upon her hands in November, 1934, "There was no broken skin or anything of that kind, like a cut" and added that her hands had not suffered any bruise or similar injury.

Dr. Millard S. Rosenblatt, a physician, whom the plaintiff visited on December 21, 1934, stated: "I believe that she had some irritation there as a result of that handling of the fruit". This witness was asked: "Whatever it was, it grew out of her employment there in the nature of some kind of a poison substance that caused the irritation"? to which he replied, "I feel that that is so". He believed that poison of the kind that was lodged upon the fruit could have entered the plaintiff's system through a minute break in the skin, adding that it might have been "a microscopic break you could not feel or know about". He also thought that the poison might have penetrated the skin through the hair follicles. Dr. George H. Bendshadler, who was consulted by the plaintiff on December 13, 1934, described the plaintiff's condition at that time thus: "It was more of a papillary rash or eczematous rash, a kind of a wet hand, you might say, and as occupational diseases are usually limited to the hands, we ask what their occupation is and where they work, and that is the history she gave me. Evidently she had been working there for some time, I don't know, maybe year after year. The history of occupational diseases, as stated, may come on suddenly or it may come on through months of work,

and it really does not make much difference as to what they have their hands in. Even water will lower their resistance if it is in there long enough, causes the papilla of the hands to swell, and infection or chemicals or anything will enter and break the resistance down or make a patient susceptible to this occupational disease. Now they can be divided into three classes. It can be chemical, which includes all the different chemicals, like arsenic of lead or any of the things used in the treatment or in the preparation of different fruits, or it can be physical; it can come through injury or excessive heat, or the patient herself can be highly susceptible. All patients are not in the same degree susceptible to the same chemical, and as probably in her case it took a considerable length of time to get her hands in that shape or make her susceptible to this one particular thing that happened to be in the solution that they were canning with.'' Later, Dr. Bendshadler expressed the opinion: ''It is probably an occupational rash. * * * I made diagnosis of rash on her hands due to the particular occupation in which she had her hands in water a long time, causing this breakdown of the resistance of the hands and opening it to infection.''

As we have already indicated, the plaintiff does not contend that in November, 1934, her hands were cut or bruised. She does not contend that in pursuing the duties of her employment anything untoward occurred, except that somehow a poisonous substance entered her system. So far as is disclosed by the record, the regular routine was pursued in the cannery during the month of November, 1934. Nothing unusual happened. The plaintiff and her co-workers intentionally handled the sprayed fruit, and, likewise, intentionally placed their hands in the water. They knew the nature of the spray upon the fruit.

■ It seems clear from the foregoing that the condition for which the plaintiff sought compensation was an occupational disease.

Section 49-1827, Oregon Code 1930, provides:

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries or dependents, if the injury result in death, shall receive compensation as hereinafter provided."

In *Iwanicki v. State Industrial Accident Commission*, 104 Or. 650 (205 P. 990, 29 A. L. R. 682), this court held that our Workmen's Compensation Act does not authorize the allowance of compensation to workmen suffering from occupational diseases. In that case the workman had become afflicted with lead poisoning through absorbing lead into his system from nails held in his mouth. That decision, after reviewing the authorities, stated in unequivocal language that our act does not authorize the allowance of compensation for occupational diseases. The decision was announced in 1922, fourteen years ago, and stated:

"It would be competent, of course, for the legislature in the exercise of its police power and the usual care for those who toil, to provide compensation for occupational diseases, but it has not done so, and we cannot write into the statute compensation for ailments which do not come within the scope of an accident caused by violent or external means."

In the 14 years that have passed since the decision in the Iwanicki case was announced, the portions of our act reviewed in that decision have not been amended by making provision for occupational diseases. Hence, we must assume that the construction placed upon our

act in that decision has met with legislative favor and that the legislature does not intend that workmen suffering from occupational diseases shall receive compensation from the Industrial Accident Fund. In *Banister v. State Industrial Accident Commission,* 142 Or. 97 (19 P. (2d) 403), and in *Demagalski v. State Industrial Accident Commission,* 151 Or. 251 (47 P. (2d) 947), the principles announced in *Iwanicki v. State Industrial Accident Commission,* supra, were reaffirmed. Those decisions recognize that the ailment for which compensation is sought must be traumatic as distinguished from diopathic. It is clear from our holdings that the State Industrial Accident Commission did not err when it denied compensation to the plaintiff.

In her brief, the plaintiff calls our attention to the decisions of other courts which hold that occupational diseases are compensatory. However, if workmen suffering from occupational diseases in this state are to have relief, the authority must come from the legislature and not from this court. We find no error. The judgment of the circuit court is affirmed.

CAMPBELL, C. J., RAND and BAILEY, JJ., concur.

BEAN, BELT and KELLY, JJ., did not participate in this decision.