Argued October 26, reversed December 14, 1955

## BLALOCK *v.* CITY OF PORTLAND ET AL
291 P. 2d 218

*Albert T. Kemmer* of Portland argued the cause for appellant. With him on the briefs was Larry Landgraver of Portland.

*David H. Breuer* of Portland argued the cause for respondents. With him on the brief was Alexander G. Brown of Portland.

PERRY, J.

The plaintiff was inducted into the police force of the city of Portland December 9, 1946, after having previously made application therefor and undergone the required physical examination. At the time of his physical examination, the plaintiff disclosed to the examining physician that because of a heart murmur he had been discharged from the United States Navy. The examining physician found the plaintiff was afflicted with a cardiac murmur, but that it was such that it would not interfere with his duties, and he was certified by the physician as physically fit.

In October, 1947, while acting on official duties, the plaintiff suffered injuries in an automobile accident, from which injuries he recovered; he continued his official duties until July 2, 1951, at which time he applied for disability retirement under § 5-115, Chapter V, Charter of the city of Portland. The plaintiff was then examined by the defendants' physician, and was found to be suffering from a cardiac condition, technically described as a "right bundle branch block", being the same diseased condition with which he was

afflicted when examined and inducted into the police service. This heart condition has progressed to such an extent that all parties agree plaintiff is now disabled from carrying on his duties as a police officer.

The trustees of the Fire and Police Disability and Retirement Fund at their regular meeting July 10, 1951, found the plaintiff to be disabled within the meaning of § 5-115, and entered an order to that effect, the order providing for disability benefits for service-connected disability. On August 14, 1951, the trustees re-examined their previous order of July 10, 1951, and rescinded the previous order on the following motion:

"In view of the fact that additional information has been revealed to the effect that Arnold W. Blalock had a heart condition prior to the time of appointment to the Police Department, which heart condition was approximately the same as at the present time and is therefore a pre-existing condition, I move that the previous action of this board in granting occupational disability benefits to the said Arnold W. Blalock be rescinded and that his application be denied."

From the Board's action of August 14, 1951, the plaintiff appealed to the circuit court of Multnomah county. The circuit court sustained the action of the Board of Trustees, and from the decree of the circuit court the plaintiff now appeals.

The plaintiff's principal contention is that the trial court erred in construing those portions of Chapter V of the Charter of the city of Portland providing compensation and retirement benefits. Chapter V, insofar as applicable to the matter before us, is as follows:

"Upon duly verified application of a member and a finding by the Board that through injury or sickness caused by the performance of duty or in line of duty the member has been unable to per-

form his required duties, said member shall be paid disability benefits equal to but not in excess of his full salary from the Fund until said member recovers or for a period of one (1) year, whichever period is shorter. * * *.

"For the purposes of this Act the disabilities of heart disease, hernia, tuberculosis and pneumonia are occupational disabilities and a member so disabled shall be entitled to the same benefits from the fund as a member injured in line of duty or in the performance of duty, for one year from the date of such disability, at which time he shall be paid benefits from the fund in an amount equal to a maximum pension until he recovers or until he would have become eligible for a maximum pension by reason of years of service or age, at which time he shall be retired by the Board and receive said maximum pension. No member shall be given occupational disability benefits if said disability can probably be successfully corrected by competent medical attention and said member fails or refuses to be treated.

"* * * * *

"All medical and hospital expenses arising from service connected disability and/or occupational disability shall be paid from the fund; except that in the case of occupational disability, such payments shall cease after one year. (Am. November 7, 1950).

"* * *. Any member who has at least one (1) year of active service and who becomes incapacitated from performing his duties on account of injury or sickness not service connected shall, upon the cessation of his salary by the City of Portland for such cause, and who at the time of his disability was contributing monthly to the fund in an amount equal to that set forth for a member under Section 5-102, be entitled to (1) temporary benefits, or (2) permanent retirement pension, and in either case shall receive his earned portion of the maximum pension, provided he remains a resident of the State of Oregon."

We should note that at the time the plaintiff was inducted into the police force of the city of Portland the portion of Chapter V beginning with "For the purposes of this Act the disabilities of heart disease, hernia, tuberculosis and pneumonia", etc., was not included, but became a part thereof in November, 1950, by approval of the voters of the city of Portland.

It is the plaintiff's contention that the Act in plain terms provides compensation for disability which arises out of a diseased heart condition, whether or not the diseased heart condition itself is traceable to sickness or injury "caused by the performance of duty or in line of duty", and in any event, whether it is clearly stated or not, the Act should be liberally construed with the view of promoting the objects of the electorate in amending the charter, and that such a view means strict construction of the Act against the administering authority; citing *Rockenfield v. Kuhl,* 242 Iowa 213, 46 NW2d 17.

■ The courts are in general agreement that pension statutes are to be liberally construed. *Price v. Society for Savings,* 64 Conn 362, 30 A 139, 42 Am St Rep 198; *Logue v. Fenning,* 29 DC App 519; *State ex rel. Holton v. City of Tampa,* 119 Fla 556, 159 So 292, 98 ALR 506; *The People v. Bd. Trustees F.P.F.,* 220 Ill App 242; *Dahlin v. Missouri Commission for the Blind,* (MoApp) 262 SW 420; *Yates County Nat. Bank v. Carpenter,* 119 NY 550, 23 NE 1108, 7 LRA 557; 40 Am Jur 963, Pensions, § 4; 48 CJ 787, Pensions, § 4B.

It is the defendants' contention that, since the plaintiff was suffering from this heart involvement at the time of his employment, the heart condition could not be connected with his employment as a policeman, and he is, therefore, not entitled to the benefits provided

for service-connected disability, but only to those benefits which are compensable as non-service connected.

In defendants' brief they set forth what they believe was the reason for the amendment to the Charter in the following language:

"Because the state statute did not compensate for occupational disease, and this court so held, it was only natural that the framers of the Fire and Police Disability and Retirement Act wishing to avoid this undesirable feature of the Workmen's Compensation Act should provide that certain named diseases shall be considered occupational and those members suffering therefrom should be entitled to certain benefits. This relieved a fireman or a policeman from the burden of proving that a certain disease was or was not one related to his occupation, but it did not relieve him from duty of showing that it occurred during his employment. This is implied in the very word "occupational." To say that the member did not even have to be employed at the time he suffered the disability offends the basic theory of any compensation act."

To support this argument defendants cite *Ryan v. State Industrial Accident Commission*, 154 Or 563, 61 P2d 426, and cases cited therein, where we held that under the act as then written occupational diseases were not compensable. They also cite numerous cases defining "occupational diseases" as diseases gradually contracted in the course of employment "and because thereof, and known from common experience to be incidental thereto, is not compensable." "If the disability comes on gradually, it is not an accident but an occupational disease." *Cannella v. Gulf Refining Co.*, (La App) 154 So 406, 409.

In the last-above cited case, and others cited by the defendants, the courts were concerned with dis-

tinguishing between diseases which could be classified as inherent in the nature of the employment with those which, if contracted, would be considered accidental. These cases are of little value in interpreting the present charter amendment.

Prior to the November 7, 1950, charter amendment, there was provided in the charter of the city of Portland § 5-122, relating to firemen:

"There shall be classified as occupational diseases within the terms of this act the following: heart trouble, hernia and tuberculosis, for which ailments the members of the bureau of fire shall receive the same benefits as provided for herein for disability in line of duty. [November 5, 1940, new sec. 218 (2).]"

When the separate relief of retirement programs for firemen and policemen was consolidated into a Fire and Police Disability and Retirement Fund under the 1950 amendment, there was added to the diseases enumerated in the firemen's act "pneumonia", and the act instead of retaining the word "diseases" substituted therefor the word "disabilities".

This change shows an intention on the part of the enactors of the charter to change the context of the act. The words "disease" and "disability" are not synonymous. "Disease" is defined as "An illness or sickness. A disturbance in function or structure of any organ or part of the body". Blakiston's New Gould Medical Dictionary (2d ed). While "disability" is defined as "a state of being disabled". Webster's New International Dictionary (2d ed).

The terminology of the present act refers not to the disease itself, but to an end result of the disease.

██ In construing a statute, words of common use are to be given their natural, plain and obvious mean-

ing. *City of Portland v. Meyer,* 32 Or 368, 370, 52 P 21. Likewise, unless an act is ambiguous, "it is the duty of the court to take the statute as it finds it without adding to it or subtracting therefrom". *Cary v. Metropolitan Ins. Co.,* 141 Or 388, 391, 17 P2d 1111.

To construe the act as contended for by the defendants we would be required to delete from the act the word "disabilities" and substitute therefor the word "diseases", which action would entirely alter the meaning of the act.

■ The Act provides that disabilities arising out of heart disease, hernia, tuberculosis, and pneumonia are to be considered as having arisen out of the occupation, and the person suffering disability therefrom shall be compensated the same as though the disability was incurred in the "line of duty or in the performance of duty". Whether the disease itself which brought about the disability was incurred in the "line of duty or in the performance of duty" is immaterial.

The plaintiff has set forth other assignments of claimed error, but our construction of the Act makes it unnecessary to discuss them.

The decree of the circuit court is reversed with instructions to enter judgment for the plaintiff as prayed.