## LOIS ANN BRAY *v.* DEPARTMENT OF REVENUE

Victor C. Hefferin, Rask, Hefferin & Carter, Portland, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered December 6, 1974.

CARLISLE B. ROBERTS, Judge.

This is an appeal from the defendant's Order No. IH 73-3 (dated June 11, 1973), and its notice of inheritance tax deficiency (No. 193082), in the Matter of the Estate of Roy A. Bray, deceased.

At issue is whether the payments to which the plaintiff-widow and surviving children of decedent have become entitled, as a result of the decedent's participation in the Portland Fire and Police Disability and Retirement Fund (Charter of the City of Portland, Chapter V), are taxable under ORS 118.050(3) as a pension (as ordered by the defendant) or are wholly exempt as "proceeds of policies and contracts of life insurance" under ORS 118.040(2) (as argued by plaintiff).

A second issue was pleaded by plaintiff alleging that benefits received by her under the federal Social Security Act were nontaxable. However, no evidence or arguments were presented in the trial with respect thereto and the court concludes that this issue was withdrawn by the plaintiff. (There may have been a justiciable issue. *See Est. R. L. Sleeter v. Dept. of Rev.,* 5 OTR 600 (1974).) In any event, the plaintiff did not sustain her burden under ORS 305.427.

Chapter V of the Charter of the City of Portland, creating the Fire and Police Disability and Retirement Fund, was authorized by an election held November 2, 1948. It was last amended on November 3, 1964. It creates a fund for the benefit of the members of the Bureau of Fire and Bureau of Police of the City of Portland and for the benefit of the widows and dependent minor children of the deceased members. Sec 5-101. The fund chiefly consists of compulsory contributions from each member and from the investment of such funds, the proceeds from certain taxes and levies, and gifts. Sec 5-102. If, at any time, the fund becomes insufficient to pay in full the pensions or benefits allowed, pensions and benefits are paid pro

rata. "No deficit shall be made up." Sec 5-127. All policemen and firemen are covered and, upon retirement, are entitled to receive a monthly pension. Sec 5-113. Provision is made for benefits for service-connected disability or occupational disability (Sec 5-115), which occur before the time for retirement. Upon reaching compulsory retirement age, disability benefits cease and pension payments are made. Sec 5-115. The plaintiff in the present suit and her minor children are beneficiaries under Sec 5-117, which, in pertinent part, reads:

> "If any member shall die prior to retirement * * * as a result of an occupational disability * * *, and shall leave a widow, said widow shall be entitled to benefits or pension as herein provided, while remaining unmarried. Said benefits shall be paid from the Fund and shall be at the rate of fifty per cent (50%) of the current salary of a First Class Fire Fighter * * *, until such time as the deceased member would have had thirty (30) years of active service or would have reached compulsory retirement age, had he lived, whichever event would have first occurred, at which time said widow while unmarried shall receive a monthly pension from the Fund. * * *

> "An additional percentage allowance for a dependent minor child or children shall be paid from the Fund to a widow qualified to receive benefits or pension under this section. This allowance shall be based on the qualified widow's benefit or pension amount * * *."

Although the words "benefits" and "pension" are not among the definitions in Sec 5-126, a reading of the whole chapter reveals that the word "benefits" appears always to be used with respect to payments from the fund which are made before the time when the member normally would have been retired for age. "Benefits"

are paid by virtue of specific provisions for a member's nonservice-connected disability and service-connected disability or occupational disability, whether payable to the member or to his widow. However, the word "pension" is used when payments are made to the member or to the widow of the member as a factor of age.

Plaintiff has seized upon this wording. While presumably conceding that a pension would be subject to tax (after the statutory exclusions) as provided in ORS 118.050, she contends that the "pension" provided by Portland's charter is not synonymous with the "benefits" and that these benefits are exempt from taxation as insurance under a contract issued before January 1, 1960, and therefore, fully exempt under ORS 118.040(2).

Chapter V of the Charter of the City of Portland, creating the fire and police disability, retirement and death benefit plan, has often been litigated (see citations listed in *Evans v. Schrunk,* 4 Or App 437, 479 P2d 1008 (1971), but the precise question here presented appears to be novel. However, *Blalock v. City of Portland et al,* 206 Or 74, 291 P2d 218 (1955), and *Evans, supra,* have held Chapter V to be a pension statute.

Life insurance is distinguishable from the form of contract created by Chapter V. Historically and commonly, life insurance involves risk shifting and risk distributing; it is a device to shift and distribute the risk of loss resulting from premature death. *Hall v. Metropolitan Co.,* 146 Or 32, 28 P2d 875 (1934). The distinguishing feature of a life insurance policy (to compensate for loss through death of the insured) is

not the predominant purpose here. The retirement system or pension in question is basically an annuity (as is typical of pensions). The city's financial risk is limited to the contributions to the fund and the interest earned thereon. Sec 5-127. From the charter's viewpoint, the contract is intended principally to meet the fireman member's monetary problem, living, whereas a life insurance contract would provide only for the member's beneficiaries in the contingency of his death. *Helvering v. Le Gierse,* 312 US 531, 61 S Ct 646, 85 L Ed 996, 41-1 USTC ¶ 10,029, 25 AFTR 1181 (1941).

 If the contract is designed as an annuity, the weight of authority holds that its description as an "annuity" persists even though it contains a provision to meet the contingency of death of the annuitant, as in the present case. *In re Richartz' Estate,* 45 Cal2d 292, 288 P2d 857 (1955), examined a teacher's retirement fund which also provided for death benefits to a designated beneficiary if the teacher died before retirement. The court noted that contributions of the employer and the employee could be adjusted from time to time to meet future liabilities as actuarially computed (which does not appear in Chapter V of the City of Portland's charter), which "suggests that there were elements of risk-shifting and risk-distribution similar to those involved in 'insurance.' * * *" But the court concluded that even in this case the death benefit payments did not constitute the "proceeds" of an "insurance policy."

A similar result was found in the case of *Gregg v. Commissioner of Corporations and Taxation,* 315 Mass 704, 54 NE2d 169, 150 ALR 1280 (1944). As stated in that case (54 NE2d, at 171-172):

"* * * The annuity contract in the instant case

was based not upon the contingency of death but upon the expectation of living. The appellant's husband did not submit to a physical examination by any physician before the contract of annuity was executed. The only possible risk that the society took was that the annuitant might live too long. It took no risk whatever with reference to the death benefit for in no event was it required to pay more than it had received. It was not bound to pay a certain lump sum irrespective of the amount paid in as a life company is required to pay upon the death of the insured. An annuity is not an indemnity against loss by death like a life policy. A man purchases an annuity for his own benefit but one usually obtains life insurance for the protection of his dependents. * * * [T]he annuity contract was not divisible, and the fact that the contract contained such a provision [death benefit for surviving spouse], or any other similar provision calling for refunded annuities in the event of the death of the annuitant before he has enjoyed the full benefit of his investment, does not convert the annuity contract into a life insurance policy or exempt those who receive the death benefit or further annuities subsequent to the death of the annuitant from a succession tax, either under statutes that expressly exempt the proceeds of life insurance policies up to a certain amount or in jurisdictions where, in the absence of any mention of insurance in the taxing statutes, the proceeds of life insurance are not taxed. [Citing numerous cases.]"

Although no Oregon case directly in point has been cited or found, relating to municipal charter provisions, the distinction between life insurance contracts and annuities has been observed in *Hall v. Metropolitan Co., supra,* and in 24 Op Att'y Gen 123, 124 (1948), 20 Op Att'y Gen 456 (1941), 20 Op Att'y Gen 51 (1940), and 16 Op Att'y Gen 199 (1933).

The statutory language used in ORS 118.040(2)

and 118.050(3) makes it imperative that a distinction be made between "all proceeds of policies and contracts of life insurance" and "[a]ny pension or retirement plan established by * * * any municipality * * *." Each of the two phrases encompasses a broad category in that there is an inevitable overlapping of aspects of life insurance and of annuities. No better method has been offered for the solution of the present question than to accept the rule followed in the cases of *Hall, supra; In re Richartz' Estate, supra;* and *Gregg, supra.*

The defendant's order, so far as it taxes the benefits in question which exceed the limited exemption established by ORS 118.050, is affirmed. The defendant is entitled to its costs.