Argued December 13; affirmed December 30, 1932

ELFORD *v.* STATE INDUSTRIAL ACCIDENT
COMMISSION

(17 P. (2d) 568)

*Miles H. McKey,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*Roland Davis,* of North Portland, and *W. M. Huntington,* of Portland (Huntington, Wilson & Huntington, of Portland, on the brief), for respondent.

CAMPBELL, J. Edward A. Elford was employed as a farm hand by Olive V. Hawke on a farm in Yamhill county. She was operating her farm under, and contributing to, the Workmen's Compensation Law, as

was Edward A. Elford. She raised grain and vegetables and a considerable quantity of nuts. On October 4, 1930, Mr. Elford was engaged in hauling sacked filberts from the Hawke farm to Trenk's warehouse at Dundee, Oregon, a few miles distant. The sacks weighed between 65 and 70 pounds each and were loaded by hand on to a trailer attached to an automobile and were unloaded from the trailer to the platform at the warehouse, also by hand. In unloading, the sacks had to be lifted "shoulder-high." In loading the sacks, he would grasp one, with a hand at each end, and lift it, supporting it against his stomach, walk two or three paces and place it in the trailer. The process of lifting in unloading was the same. When the unloading was completed, he and Mr. Hawke, who operated the machine hauling the trailer, returned to the farm. They had left the warehouse but a short distance, when Mr. Elford complained of "feeling pretty badly." Dr. Hawke, who is a retired physician, observed from his appearance that he must be in considerable distress. They arrived home and Mr. Elford did no more work that day except to milk two cows in the evening. The next morning, his physical condition was worse and he was taken to Hillsboro to see Dr. Robb, who prescribed for him. Upon Dr. Hawke's return to the farm on October 8, he discovered that Mr. Elford's condition had become quite serious. The abdomen had bloated to a dangerous extent, causing much pain and distress, and Dr. Hawke advised immediate surgical attention. Dr. Robb was called and agreed with Dr. Hawke and took Mr. Elford to the Good Samaritan Hospital in Portland, where Dr. Cathay performed an abdominal operation assisted by Dr. Robb. On making an opening through the wall of the abdomen, they discovered a malignant cancerous

growth which had been ruptured, exuding bloody fluid into the abdominal cavity, which was the immediate cause of the bloating. The cancerous growth affected the pancreas, the liver and the suprarenal glands to such an extent that any further operation would be useless and probably immediately fatal. The incision was closed. Mr. Elford died on October 11. Prior to October 4, Mr. Elford was apparently an able-bodied man, able to do ordinary farm labor without pain or distress and while some time before he had complained of some pain in the abdominal region it in noway interfered with his ability to labor and was not considered at all serious.

His widow, respondent, filed a claim with the State Industrial Accident Commission for benefits under the Workmen's Compensation Law, alleging that the death of Edward A. Elford resulted from an accidental injury received by him on October 4. The claim was rejected on the grounds that the death of Edward A. Elford did not result from an accidental injury. Due steps were taken to appeal the case to the circuit court where the cause was tried to a jury. At the close of the evidence in the case, appellant moved for a directed verdict which motion was denied, and the cause submitted to the jury which returned a verdict for respondent. The defendant appeals and assigns as error the court's refusal to direct a verdict in its favor.

No exceptions were taken to any of the court's instructions. The only question presented by the record herein is, is there any competent evidence to sustain the verdict of the jury?

It is admitted that respondent's decedent and his employer were under the Workmen's Compensation Law and that he was in the regular course of his employment at the time of the alleged injury.

These questions were submitted to the jury:

"1. (Question) Did Edward A. Elford receive an injury by external or violent, accident means in the course of his employment on the 4th day of October, 1930?

"2. (Question) Was the injury received by Edward A. Elford on October 4th, 1930, the proximate cause of his death on October 11th, 1930?"

Both of these questions were answered in the affirmative by the jury.

The testimony shows that shortly after leaving the warehouse, on his return, he began to complain.

"Well, we didn't get very far from Trenks that he complained, he said, 'Doctor, I am feeling pretty badly,' and I saw by his face that he was very much distressed and I began to question him a little bit, asking him what was his ailment and he complained of pains in the region of his stomach so I says, 'Well, we'll get home just as quickly as we can and you just lay by the balance of the day and you take it easy until you are better.' I don't think that he did anything more that day."

This was a circumstance to be taken into consideration by the jury in arriving at their verdict.

Dr. Cathay testified, in effect, that, in his opinion, the immediate cause of death of respondent's decedent was the rupture of the cancer. He was then asked:

"Q. What would you say was the cause of the rupture, in your opinion, basing it upon these facts?

"A. Well, basing it upon these facts, without what I found afterward, of course, and knowing what I have found out later, that it is my opinion that the weight of these sacks against the abdomen was sufficient to rupture the cancerous growth within the abdomen.

"Q. Is there anything else in the recited facts that we are assuming to be true that would have caused the rupture, in your opinion?

"A. I doubt very much if there was, * * * it is my opinion that the lifting of these heavy sacks, and perhaps the weight of them on the abdomen ruptured this very friable cancer within his abdomen. * * * It is my opinion that the pressure or the strain that caused it to rupture was from the outside. * * * It didn't strike me as being a spontaneous rupture at all."

Dr. Robb testified to the same effect. This testimony was uncontradicted, consequently, there was some competent evidence that lifting the sacks was the proximate cause of the death and, if so, the death was caused by external means. Oregon Code 1930, § 49-1827.

The injury must also be caused by accidental means. It could not be said that the injury was contemplated, or known in advance, or naturally expected to happen. From all the circumstances and testimony, the jury could very well draw the inference that the injury was accidental. *Dondeneau v. State Industrial Accident Commission,* 119 Or. 357 (249 P. 820, 50 A. L. R. 1129); *Blair v. State Industrial Accident Commission,* 133 Or. 450 (288 P. 204); *Huntley v. State Industrial Accident Commission,* 138 Or. 184 (6 P. (2d) 209).

"Likewise the courts, consistent with the theory of workman's compensation acts, hold with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred and the disability or death does not result from the disease alone progressing naturally, as it would have done under ordinary conditions, but

the injury aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation acts." 1 Schneider on Workman's Compensation Law (2d Ed.) § 138, p. 517, and see cases cited in support of the text.

It was not error to submit the cause to the jury under instructions to which there was no exception.

The judgment of the circuit court will be affirmed.

It is so ordered.

Bean, C. J., Belt and Kelly, JJ., concur.