Argued March 17, affirmed June 15, 1960
# OLSON *v.* STATE INDUSTRIAL ACCIDENT COMMISSION
352 P. 2d 1096

*Gerald C. Knapp,* Assistant Attorney General, Portland, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney Gen-

eral, and Ray H. Lafky, Assistant Attorney General, both of Salem.

· *Brice L. Smith,* Portland, argued the cause and filed a brief for respondent.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL and DUNCAN, Justices.

PERRY, J.

Bennie C. Olson was employed as a powderman and jackhammer operator by the Western Logging Co., a division of the Inman-Poulsen Timber Corporation. On the morning of December 30, 1957, although not feeling well, Olson went with his fellow-workers to the worksite. The motor on the compressor (which was mounted on a truck) used by Olson in operating the jackhammer would not function and a mechanic was called to put it in order. During the morning, while the mechanic was working upon the motor, Mr. Olson appeared to be in physical distress and complained of feeling "awful." At approximately 11:30 a. m., learning that the mechanic had the motor in running condition, Olson left the crew truck where he had been reclining most of the morning, stating he felt better and would try to work. He then walked approximately 100 feet, climbed upon the bed of the truck upon which was mounted the motor and compressor, engaged the hand lever clutch which caused the motor to operate the compressor, and the motor began to falter. The mechanic, wondering why the clutch was not then disengaged by Olson, noticed Olson appeared to be in a "blacked out" condition. The mechanic called two other workmen and Mr. Olson was removed from the truck to the ground. He did not regain consciousness and expired almost immediately.

The medical diagnosis of the cause of death was coronary occlusion.

Margaret Olson, widow of Bennie C. Olson and plaintiff herein, filed her claim with the State Industrial Accident Commission. The claim was rejected because "there is no reasonable medical connection between the condition causing the death of the deceased which was cardiac in origin and the incident of December 30, 1957."

After exhausting her remedies before the commission without favorable result, plaintiff commenced this action in the Circuit Court of Multnomah County, which was tried before the court without a jury. The trial court found in favor of the plaintiff and the defendant appeals upon the ground that there is no substantial evidence to support the findings of the trial court.

The defendant bases its contention—that the record fails to establish the deceased sustained an accidental injury arising out of his employment—upon its interpretation of the 1957 amendments to the Workmen's Compensation Act.

ORS 656.202(1) formerly read:

"If any workman, while subject to ORS 656.002 to 656.590 and in the service of an employer who is thus bound to contribute to the Industrial Accident Fund sustains a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries, if the injury results in death, shall receive compensation as provided in ORS 656.202 to 656.238."

By Oregon Laws 1957, ch 718, ORS 656.202(1) was amended and now reads:

"If any workman, while subject to ORS 656.002 to 656.590 and in the service of an employer who is

thus bound to contribute to the Industrial Accident Fund sustains an accidental injury arising out of and in the course of his employment, he or his beneficiaries, if the injury results in death, shall receive compensation as provided in ORS 656.202 to 656.206 and 656.208 to 656.234."

And ORS 656.002(19) further provided by definition:

"An injury is accidental if the result is an accident, whether or not due to accidental means."

This is a case of first impression under the changes effected by the 1957 amendments.

■ It is quite clear that the language used in amending ORS 656.202(1) was intended to enlarge the operation of the statute. The removal of the words "caused by violent or external means" undoubtedly had as its purpose the bringing within the coverage of the act those workmen who, though doing an intentional act required by their employment, suffered an unintended injury because of some physiological weakness, but were excluded from the coverage of the act because the injury suffered was not caused by an external force. *Burrows v. State Ind. Acc. Com.*, 209 Or 352, 306 P2d 395; *Gottfried v. State Ind. Acc. Com.*, 168 Or 65, 120 P2d 970; *Chalfant v. Arens et al.*, 167 Or 649, 120 P2d 219; *Dondeneau v. State Industrial Acc. Com.*, 119 Or 357, 249 P 820, 50 ALR 1129.

■ It should be noted also that prior to amendment ORS 656.202(1) employed this phrase "sustains a personal injury by accident," while as amended it reads "sustains an accidental injury." While this change is noted, in our opinion, these phrases are equivalent, they mean exactly the same thing.

An accident may, in general, be defined as "an unlooked-for mishap or an untoward event which is not expected or designed." *Fenton v. J. Thorley & Co.,*

*Ltd.,* (1903) AC 443, 448. See also *Clover, Clayton &
Co., Limited v. Hughes,* (1910) AC 242, 3 BWCC 775.

Prior to the 1957 amendment, in construing the
word "accident," which was undefined, but qualified
by the words "violent and external means," this court
said:

> "The word 'accident', as used in the statute, is
> taken in its popular and ordinary sense. It denotes
> or includes any unexpected personal injury result-
> ing to the workman in the course of his employment
> from any unlooked for mishap or occurrence. Speak-
> ing generally, an accident means any unintended
> and unexpected loss or hurt apart from its cause;
> and, if the cause is not known, the loss or hurt it-
> self would certainly be called an accident. It is
> also used to denote both the cause and effect. If
> the result is such as follows from ordinary means
> voluntarily employed, in a not unusual or unex-
> pected way, it can not be called a result effected
> by accidental means: Mut. Acc. Ass'n. v. Barry,
> 131 U.S. 100 (33 L. Ed. 69, 9 S. Ct. 755); Fenton v.
> Thorley, (1903) A.C. 443; Boyd, Workmen's Com-
> pensation, § 446." *Blair v. State Ind. Acc. Com.,*
> 133 Or 450, 454, 288 P 204.

It is to be noted, while the definition of "accident"
as used is broad enough to include both cause and
effect, the sentence used and the citations set forth
in *Blair v. State Ind. Acc. Com.,* supra, leave no doubt
but that the court intended to point out that to bring
the workman within the act as then written the cause
which produced the injury must be accidental. This is
demonstrated in the opinion of this court in *Demagal-
ski v. State Ind. Acc. Comm.,* 151 Or 251, 254, 47 P2d
947, where we stated:

> "* * * this court is committed to the line of
> cases which hold that where an unusual or unex-
> pected result occurs by reason of the doing by in-

sured of an intentional act, where no mischance, slip or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen."

■ The legislature in 1957 in amending the act and defining an accidental injury as:

"An injury is accidental if the result is an accident whether or not due to accidental means." ORS 656.002(19).

clearly intended to set aside the previous rule—that the cause of the injury must be accidental—and provide that any workman who undesignedly and unexpectedly suffered a hurt, without reference to whether the cause of the injury itself was accidental, was to be included within the orbit of the act, insofar as the act requires the injury to be by accident.

In a case such as the one before us, where the injury is caused by an internal as opposed to an external physical injury, the defendant contends, even though the result to the individual workman may be classified as accidental, usual exertion in the performance of routine duties which operate in a normal manner upon the physical powers of an individual do not meet the test of "accidental injury" required in the act.

■ It is true the majority of the courts in this country bringing into the definition of "accident" the thought that some occurrence of an unusual nature must occur so that it can be said there has been an accident, but it appears to us that the reasoning of those courts cannot be applied under the definition used in our present statute, because the "unusual occurrence" theory must logically be treated as a cause of the accident. Under the present statute there is no requirement

that the injury itself be due to an accidental cause; it is sufficient, if, looking back from the injury, it can be said the workman suffered an accident.

In our opinion, the clear wording of the definition of an injury as "accidental" as used in the amended statute is intended to dispose of this very problem which has been created in many courts in an attempt to draw difficult distinctions between usual and unusual strains placed upon the physical powers of the workman at his labors to discover an accidental cause. See 1 Larson, Workmen's Compensation Law 516, Injury from usual exertion or exposure § 38.

■ Under the interpretation we place upon the present statute, we believe there can be little question but that the accidental element in the present statute was satisfied. Bennie C. Olson did not intend his sudden death, it was not expected nor designed, but was an unlooked for and unexpected event. There is no evidence the deceased had any prior knowledge that he was suffering from a heart condition which would cause him to suffer death from the slightest labor performed.

■ There is no question but that the injury arose in the course of the deceased's employment, but to satisfy the statute it must appear that the accident he suffered arose out of the employment. Reduced to its simplest form "arising out of" as used in the act means the work or labor being performed was a causal factor in producing the injury suffered by the workman. *Ramseth v. Maycock,* 209 Or 66, 304 P2d 415; *Brazeale v. State Ind. Acc. Comm.,* 190 Or 565, 227 P2d 804; *Larsen v. State Ind. Acc. Com.,* 135 Or 137, 295 P 195. It need not be the sole cause, but is sufficient if the labor being performed in the employment is a material, contributing cause which leads to the

unfortunate; result. *Elford v. State Ind. Acc. Comm.*, 141 Or 284, 17 P2d 568.

■ "The Oregon Workmen's Compensation Law, as that of many of the other states, prescribes no standard of physical fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health." *Keefer v. State Ind. Acc. Commission*, 171 Or 405, 412, 135 P2d 806. However, while there is no standard of physical fitness required, it cannot be said that merely because death occurs from the effects of a disease or an injury is suffered, which by reason of physiological weakness would have occurred at the time it did, in the course of the employment, there existed a causal relation to the employment. See 1 Larson, Workmen's Compensation Law 49, Risks personal to the claimant, § 7.20.

A medical expert called by the plaintiff testified as follows:

"In my opinion, while this man undoubtedly had pre-existing coronary artery disease, the sum total of the circumstances at this particular time wherein he operated this lever which required a certain amount of effort, that the effort involved in operating this clutch lever probably contributed to the development of the final episode in his life, or the coronary occlusion."

In direct contrast a medical witness for the defendant testified that the labor which the decedent performed neither contributed to nor had any effect upon his physical being:

"The reason I say this is that coronary occlusions are, of course, when the blood vessel supplying heart muscle is shut off by virtue of a clot forming in the blood vessel or a hemorrhage beneath a little plaque in the blood vessel which occludes it.

This in turn shuts off blood supply to the heart muscle involved and this heart muscle then immediately undergoes the term we call necrosis, which means death while the patient continues to live. In other words, death of part of the heart muscle. In this type of situation the patient does one of two things. They survive or they expire. This is the prime cause of sudden death.

"Now, seventy per cent, roughly estimated, of people who have this blood vessel heart problem have it occur in sleep or at complete rest. Surely the remainder occur at any other capricious moment throughout the day or night independent of activity at hand."

■ There is thus a direct conflict in the evidence. On the one hand, one medical expert contends the physical exertion, acting upon the diseased coronary artery, produced the coronary occlusion, while the other contends the disease alone produced the occlusion which injured the heart.

We are not at liberty to decide which medical hypothesis is correct. We must accept the trial court's determination that the work the deceased was doing contributed to the injury which led to his death.

The judgment is affirmed.

O'CONNELL, J., specially concurring.

I fully concur in the opinion of the court but I feel that the possible economic and social import of our decision should be made known.

The extension of the meaning of accident to include injury or death resulting from usual exertion on the job, which ORS 656.002 (19) now accomplishes, certainly will result in increasing the number of industrial accident claims. The fear has been expressed that this type of definition "opens the flood gates and

every internal failure becomes an accident just because it happens." *Purity Biscuit Co. v. Industrial Commission,* 115 Utah 1, 201 P2d 961 (1949). And see, Note, 31 Wash L Rev 192 (1956); Note, 41 Marquette L Rev 347 (1958). However, there are some controls because as 1 Larson, Workmen's Compensation Law, § 38.83, p 565 notes, "There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse."

The case at bar illustrates the extent to which a slight exertion can be regarded as a contributing cause of the injury or death. The mere movement of the arm in manipulating the lever was regarded by plaintiff's medical witness as a probable causal factor in bringing decedent's heart weakness to a climax in death. The jury could have accepted this explanation for the workman's death and we are not entitled to substitute our judgment in the matter. Since, in cases of this type, it can be expected that medical testimony will always be presented by claimant to establish causal connection between exertion and death, the result of adopting the broad definition prescribed by the legislature is to make compensable nearly every death from cardiac weakness, assuming, of course, that some work movement accompanies the attack.

The cost of such a program can come high, and it is not all visited upon the employer. It has been estimated that in the state of Washington the cost to an employer for the death of one employe is in excess of ten thousand dollars. There is evidence that because of this potential cost it is very difficult in that state for a person with cardiac trouble to obtain employment. Rutledge, Proposed Procedure for Administering Heart Cases Under the Washington Industrial Insurance Act, 31 Wash L Rev 67 (1956). This prospect

of increased costs and the unemployment of persons afflicted with heart disease, resulting from the broadened definition of "accident," would not be the cause for comment in this opinion if it were not for the fact that there is substantial medical opinion to the effect that usual strain should not be considered as a cause of heart attack. Aronson, Effects of Effort on the Diseased Heart, 55 Northwest Medicine 54 (1956). See also, Viko, Medico-Legal Problems of the Heart in Relationship to Injury, 23 Utah Bar Bulletin 47 (1953). Cf., Boas, Trauma and Heart Disease, 2 NACCA 113 (1948); Phipps, The Effect of Work on the Diseased Heart, 2 U S Labor Dept Bull 175 (1934).

If there is no causal connection between usual strain and heart failure, the accident does not "arise out of" the employment and the disability or death is not legally compensable. It is argued that the granting of recovery in heart cases where there is no more than usual strain constitutes a judicial discarding of the requirement that to be compensable an injury must arise out of the employment. Hubbard, Trends in Compensable Heart Incidents, 26 Ins Counsel J 154 (1959). But this is true only if one rejects the testimony of medical witnesses who take the stand and in lieu thereof accept the opinion of medical experts as reported outside of court. This, of course, we cannot do.

It has been suggested that the courts might create a rebuttable presumption to the effect that usual strain is not a cause of heart attack. Newland, Heart Attack Cases Under the Washington Workmen's Compensation Act, 33 Wash L Rev 420 (1958). It would be reasonable to recognize such a presumption if we could take judicial notice of the medical opinion referred to above, but as we have already stated, this we are not

permitted to do. Other possible solutions have been suggested. See Rutledge, Proposed Procedure for Administering Heart Cases Under the Washington Industrial Insurance Act, 31 Wash L Rev 67 (1956); Note, 47 Ky L J 451 (1959).

The solution, if one is desired, must come from the legislature and not from the courts. We can do no more than report the problem as we see it and indicate the limits of our power to solve it.

McALLISTER, C. J., concurs.