Argued and submitted June 24, 2021; decision of Court of Appeals affirmed, order of Workers' Compensation Board reversed April 21, 2022

Marisela JOHNSON,
*Respondent on Review,*

*v.*

SAIF CORPORATION
and The Terrace Corporation,
*Petitioners on Review.*

(SAIF 12-01864, 12-02168)
(CA A160491) (SC S068208)

507 P3d 1277

Claimant injured her left hand in a work-related incident and SAIF accepted her workers' compensation claim. A short time later, claimant sought to modify the claim to include additional injuries to her left forearm, shoulder, and upper back. SAIF denied the request as to some of those injuries after it found that the injuries were not compensably related to the work incident. Prior to closing claimant's accepted claim, an examination indicated that claimant suffered permanent impairment, including decreased grip strength that was attributed 50 percent to the accepted, compensable conditions and 50 percent to the denied conditions. At claim closure, SAIF apportioned claimant's permanent partial disability award and reduced the award based on the percentage caused by the denied conditions. The Workers' Compensation Board upheld the apportionment of claimant's award, but the Court of Appeals reversed. SAIF sought review of that decision. *Held*: Under ORS 656.214, a claimant is entitled to compensation for the full measure of impairment that is due in material part to, and resulting in material part from, the compensable industrial injury unless the insurer or self-insured employer avails itself of the statutory process for apportionment of combined conditions.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is reversed.

On review from the Court of Appeals.*

Daniel Walker, Appellate Counsel, SAIF Corporation, argued the cause and filed the briefs for petitioners on review.

Jodie Phillips Polich, Law Offices of Jodie Anne Phillips Polich, PC, Milwaukie, argued the cause for respondent on review. Donald M. Hooten, Beaverton, filed the brief.

_____

* On judicial review of an order of the Workers' Compensation Board. 307 Or App 1, 475 P3d 465 (2020).

Benjamin Debney, Wallace, Klor, Mann, Capener & Bishop, P.C., Lake Oswego, filed the brief for *amicus curiae* Wallace, Klor, Mann, Capener & Bishop, P.C.

Rebecca A. Watkins, Sather Byerly & Holloway, LLP, Portland, filed the brief for *amici curiae* Oregon Business & Industry and Providence Health & Services.

Sommer E. Tolleson, Tolleson Conratt Nielsen Maher & Replogle LLP, Tigard, filed the brief for *amicus curiae* Associated General Contractors – Oregon Columbia Chapter.

Julene M. Quinn, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

NELSON, J.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is reversed.

_____
** DeHoog, J., did not participate in the consideration or decision of this case.

**NELSON, J.**

The dispute in this workers' compensation case concerns the meaning of the word "impairment" within the context of the workers' compensation statutory scheme and whether a claimant is entitled to compensation for the full measure of impairment where it is caused in material part, but not solely, by a compensable injury. Under ORS 656.214 (1)(a), impairment is defined as "the loss of use or function of a body part or system due to the compensable industrial injury." This case involves impairment—claimant's loss of grip strength—that was determined to be caused in material part by an accepted, compensable condition and, in part, by a denied condition. Claimant contends that ORS 656.214 entitles an injured worker to compensation for the full measure of impairment due in material part to, and resulting in material part from, the compensable injury, including any impairment stemming from the denied condition, if applicable. SAIF disagrees, arguing that the definition of impairment does not include loss caused by a denied condition because it is not "due to" the "compensable industrial injury."

For the reasons that follow, we conclude that claimant was entitled to the full measure of her impairment. Accordingly, we affirm the decision of the Court of Appeals.

## I.   BACKGROUND

A.   *Key Terminology and Statutory Background*

We begin with an overview of the key terminology and the workers' compensation claims process to set the context for the issues presented in this case. After a workplace injury occurs, the worker is generally required to provide written notice of the injury to the employer within 90 days of the accident. *See* ORS 656.265(1)(a) ("Notice of an accident resulting in an injury or death shall be given immediately by the worker or a beneficiary of the worker to the employer, but not later than 90 days after the accident. The employer shall acknowledge forthwith receipt of such notice."). During its investigation and evaluation of a submitted claim, the insurer or self-insured employer must determine if the claimant's claim is compensable. "The burden of proving

that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker." ORS 656.266(1). "A 'compensable injury' is an accidental injury \*\*\* arising out of and in the course of employment requiring medical services or resulting in disability or death." ORS 656.005(7)(a).

After the insurer or self-insured employer makes a determination about whether the claim is compensable, then the employer is required to issue a written acceptance or denial of the claim to the employee. *See* ORS 656.262 (6)(a) ("Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim."). If the claim is accepted, then the required notice of acceptance must comply with the requirements set forth in ORS 656.262(6)(b), including a specification of the exact conditions that are compensable and a statement of the claimant's rights and responsibilities for returning to work. By contrast, if the insurer or self-insured employer investigates the claim and determines that the claim is not compensable, then the employer must issue a written notice of its decision to deny the claim. ORS 656.262(9). The notice of denial must "stat[e] the reason for the denial" and inform the worker of their rights to a hearing to contest the denial. ORS 656.262(9).

When an accepted, compensable condition becomes medically stationary—that is, when "no further material improvement would reasonably be expected from medical treatment, or the passage of time[,]" ORS 656.005(17)—then the claim is subject to claim closure and any award of permanent partial disability, if applicable in the claimant's case, is calculated.[1] *See generally* ORS 656.268 (describing the claim closure process). At that point, ORS 656.262(7)(c) sets out the procedure for closing the claim:

---

[1] Permanent partial disability is defined within the workers' compensation statutes as either "[p]ermanent impairment resulting from the compensable industrial injury or occupational disease" or "[p]ermanent impairment and work disability resulting from the compensable industrial injury or occupational disease." ORS 656.214(1)(c). Permanent partial disability benefits are to be calculated in accordance with the rules and procedures set out in ORS 656.214.

"When an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. *** Any objection to the updated notice or appeal of denied conditions shall not delay claim closure pursuant to ORS 656.268. If a condition is found compensable after claim closure, the insurer or self-insured employer shall open the claim for processing regarding that condition."

The claimant may then accept the closure and the payment of benefits or, if the claimant objects to the terms of the notice of closure or the scope of the award, the worker may request reconsideration. *See generally* ORS 656.268(5)(c) (describing the requirements of the notice of closure, including a statement regarding the claimant's right to request consideration). If the claimant's physical impairment is in dispute on reconsideration, then the Director of the Department of Consumer and Business Services (DCBS) must appoint a medical arbiter to consider the claim. *See* ORS 656.268(8)(a) ("If the basis for objection to a notice of closure issued under this section is disagreement with the impairment used in rating of the worker's disability, the director shall refer the claim to a medical arbiter appointed by the director."). As before, the claimant has the burden of establishing the nature and extent of the impairment and its relationship to the compensable injury. ORS 656.266.

B.  *Facts and Procedural History*

With that background in mind, we turn to the facts of this case. The issue in this case centers on the insurer's calculation of claimant's impairment award for permanent partial disability. The relevant facts of this case are not in dispute and are taken from the Court of Appeals' opinion in the decision now on review, that court's earlier consideration of this same case, *Johnson v. SAIF*, 291 Or App 1, 418 P3d 27 (2018) (*Johnson I*), and the record from the Workers' Compensation Board.

In July 2011, claimant, a housekeeper, was injured at work when her left hand was caught in a closing elevator door. Claimant filed a workers' compensation claim, and SAIF accepted the claim for contusions to the distal left

third, fourth, and fifth fingers, and an abrasion to the distal left middle finger.

In August 2011, after receiving treatment for the initial injury, claimant sought treatment for additional pain in her left forearm, shoulder, and upper back. Claimant attributed the need for the additional treatment to the workplace incident, specifically claiming that it occurred when she pulled her hand back out of the closing elevator door. An MRI revealed a partial thickness tear of the supraspinatus tendon in claimant's left shoulder.

In October 2011, claimant's attending physician conducted an examination of claimant's left hand and determined that claimant's workplace injury to that hand had resolved. The physician confirmed that claimant's left finger injuries were medically stationary as of October 28, 2011, and those conditions had resolved without any ratable permanent impairment. SAIF closed the claim for the injury to the left hand and, pursuant to the process laid out above and detailed in the workers' compensation statutes and accompanying administrative rules, determined that claimant was not entitled to any award for permanent partial disability. Claimant requested reconsideration and the appointment of a medical arbiter.

Meanwhile, claimant continued to seek treatment for the additional pain to her left forearm, shoulder, and upper back. Claimant filed a new or omitted medical condition claim for a left rotator cuff tear, left upper arm sprain, left elbow sprain, and cervical disc disorder. In January 2012, SAIF modified its initial order of acceptance to include benefits for sprains of the left shoulder and the left trapezius muscle, but it issued a denial of the claim for a left rotator cuff tear, left upper arm, forearm, and elbow sprain, and cervical disc disorder. In denying those claims, SAIF explained that the conditions were not compensably related to the work injury. Claimant requested a hearing before the Workers' Compensation Board on the denied claim.

In March 2012, a medical arbiter performed an examination to determine claimant's permanent impairment related to the accepted left finger contusions and abrasion. The medical arbiter listed his "Impression" of claimant's

conditions as: "(1) Crush injuries left index, long, ring, and possibly little fingers left hand. (2) Claimed rotator cuff tear, partial tear or aggravation, left shoulder." The medical arbiter documented limited range of motion and decreased grip strength in claimant's left fingers. He attributed 100 percent of the loss of range of motion to the accepted conditions. As to the loss of grip strength, however, the medical arbiter only partially attributed the impairment to the accepted conditions (50 percent) and partially to the denied shoulder condition (50 percent). Describing the loss of grip strength, the medical arbiter noted that it was "a combined condition related to her shoulder, her hand, and to disuse."

In April 2012, an Order on Reconsideration modified SAIF's earlier notice of closure. The reconsideration order acknowledged that SAIF had denied the left rotator cuff tear, left upper arm sprain, left elbow sprain, and cervical disc disorder as noncompensable. It also further noted that SAIF had accepted, after the claim closure was issued, a left shoulder sprain and left trapezius muscle strain. None of those injuries was subject to the reconsideration order, which was limited to the left finger contusions and abrasion. Based on the medical arbiter's findings regarding those conditions, claimant was awarded benefits for a left-hand impairment value of seven percent whole person impairment. That value included benefits for the loss of grip strength, apportioned to the accepted left-hand claim at 50 percent, per the medical arbiter's findings.

Both parties requested a hearing before the Workers' Compensation Board (board). The board upheld the medical arbiter's findings and affirmed the apportionment of claimant's permanent partial disability award.[2] Claimant sought judicial review of that decision, arguing that her entire impairment from the loss of grip strength, which she claimed was caused in material part by the compensable hand injury, is compensable and should have been rated, without apportionment, for the permanent partial

---

[2] The Workers' Compensation Board did reverse a portion of the findings below, related to an increase in claimant's whole person impairment and an award of attorney fees. Those decisions are not in dispute before this court on this claim.

disability award. In the Court of Appeals' initial consideration of this case, that court relied on this court's opinion in *Schleiss v. SAIF*, 354 Or 637, 317 P3d 244 (2013), which is described in detail below, to reject claimant's argument and uphold the order of the Workers' Compensation Board. *Johnson I*, 291 Or App at 7.

Claimant petitioned this court for review, advancing the same arguments as before. While that petition for review was pending, this court issued its decision in *Caren v. Providence Health System Oregon*, 365 Or 466, 446 P3d 67 (2019). This court allowed claimant's petition for review, vacated the Court of Appeals' decision, and remanded the case to the Court of Appeals for reconsideration in light of that decision. *Johnson v. SAIF Corporation*, 365 Or 657, 451 P3d 1014 (2019).

On remand, the Court of Appeals reversed its earlier decision. *Johnson v. SAIF*, 307 Or App 1, 5, 475 P3d 465 (2020) (*Johnson II*). Relying on this court's decision in *Caren*, the Court of Appeals explained that, when a worker's impairment is due to a combination of the compensable injury and a preexisting condition, "the legislature intended that injured workers would be fully compensated for new impairment if it is due in material part to the compensable injury, except where an employer has made use of the statutory process for reducing liability after issuing a combined condition denial." *Johnson II*, 307 Or App at 4 (quoting *Caren*, 365 Or at 468). Because apportionment between different injuries can only occur in a combined condition claim, and because claimant's impairment was not the result of a combined condition, that court concluded that claimant was entitled to the full measure of her impairment, without regard to SAIF's previous denial of the rotator cuff injury. *Id.* at 5.

SAIF petitioned for review, arguing that the Court of Appeals decision conflicts with the plain language of ORS 656.262(2). That statute provides that compensation for a claim is to be paid upon an employer's notice or knowledge of that claim, "except where the right to compensation is denied by the insurer or self-insured employer." ORS 656.262(2). SAIF contends that the decision below improperly extends this court's decision in *Caren* beyond the combined conditions

process specific to that case. As we understand SAIF's view, impairment does not include loss due to a condition that has been denied as "noncompensable" and, accordingly, any award for permanent partial disability should be adjusted to reflect only the portion of the impairment that claimant is entitled to based solely on the accepted condition.

We allowed review to consider the extent to which the workers' compensation statutes, and specifically ORS 656.214, require an insurer or self-insured employer to award benefits for the full measure of an injured worker's impairment when that impairment may be apportioned, at least in part, to a previously denied, noncompensable condition.

## II.   ANALYSIS

On review, SAIF argues that the Court of Appeals was incorrect in applying *Caren* to this case and that that court's conclusion demonstrates what SAIF describes as a "fundamental confusion" about the meaning of "compensable industrial injury" in cases, like this one, involving denied conditions. Instead, SAIF argues that the statutory scheme of the workers' compensation statutes and the case law interpreting those statutes supports the proposition that benefits—including awards for permanent partial disability—are not intended to flow from specifically denied conditions. In SAIF's view, when an insurer issues a partial denial of a medical condition, the denied condition is not subject to an award of permanent partial disability unless the condition is later determined to be compensable, and the denial is overturned. Here, SAIF argues that claimant was not entitled to an award for impairment attributable to the denied left rotator cuff tear because claimant never established that that injury was compensable and SAIF had specifically denied the claim.[3]

---

[3] *Amici* Oregon Business & Industry (OBI) and Providence Health & Services write in support of SAIF, reiterating many of the same arguments and specifically arguing that the definition of impairment in ORS 656.214 makes clear that "[a] denied condition is expressly not a compensable condition" and, accordingly, "a worker should not receive disability awards for impairment due to a denied condition." Additionally, Associated General Contractors – Oregon Columbia Chapter and Wallace, Klor, Mann, Capener & Bishop, P.C., have each submitted an *amicus curiae* brief in support of SAIF. Oregon Trial Lawyers Association wrote in support of claimant.

For her part, claimant acknowledges that *Caren* involved consideration of a combined condition and agrees with SAIF that there was no combined condition in this case. Both parties recognize that the combined condition analysis in *Caren* is inapplicable here and, to the extent that the Court of Appeals relied on it below, contend that that reliance was misplaced. Claimant, however, agrees with the Court of Appeals that she was entitled to the full measure of impairment due to the compensable injury and disputes SAIF's assertion that the decision below improperly forces an insurer to pay benefits for a denied condition. Instead, in claimant's view, the decision below recognizes that conditions that are not compensable—here, the previously denied left rotator cuff tear—can contribute to impairment that is part of the compensable injury. Claimant argues that an injured individual is entitled the full measure of impairment—even where a portion of that impairment may have been caused, in part, by a noncompensable or denied condition—where the accepted condition is at least a *material contributing cause* of the impairment. It is claimant's position that the Court of Appeals properly determined that claimant was entitled to compensation for her loss of grip strength, the impairment value at issue here.

As explained above, the workers' compensation statutes provide for a specific process that must be adhered to following a workplace injury. When an accepted, compensable injury becomes medically stationary, and proper notice has been issued to the claimant, then the insurer or self-insured employer calculates the amount of disability benefits due to the claimant. *See* ORS 656.268. Our understanding of the primary disagreement between the parties is that the dispute centers around the meaning of the word "impairment" and whether that term includes loss that is caused in part by a previously denied condition and in part by the accepted compensable injury, but where neither party contends that a combined condition exists. The meaning of the word impairment, and what that word encompasses, is a question of statutory construction.

When we are confronted with an issue of statutory construction, we resolve that issue following the established

statutory interpretation framework laid out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our primary goal in interpreting statutory provisions is to determine the intent of the legislature at the time it enacted the relevant statutes. *See Gaines*, 346 Or at 171 ("This court remains responsible for fashioning rules of statutory interpretation that, in the court's judgment, best serve the paramount goal of discerning the legislature's intent."). To determine whether the legislature intended for injured workers to receive the full measure of impairment caused in part by a compensable injury, even if such impairment was also caused in part by a previously denied condition, we examine the workers' compensation statutes as a whole and our prior judicial interpretations of those statutes. *See Caren*, 365 Or at 472 (citing *Brown v. SAIF*, 361 Or 241, 283, 391 P3d 773 (2017)). With that in mind, we turn to the statutes at issue in this case.

A.   *Textual Analysis and Prior Judicial Construction*

We begin with key definitions from the workers' compensation statutes themselves. A compensable injury is "an accidental injury, \*\*\* arising out of and in the course of employment requiring medical services or resulting in disability or death." ORS 656.005(7)(a). This court has construed "arising out of," as used in the definition of "compensable injury," to mean that a workplace injury must be a material contributing cause of disability or the need for medical treatment in order for the injury to be compensable. *Olson v. State Ind. Acc. Com.*, 222 Or 407, 414, 352 P2d 1096 (1960). We explained that "arising out of" does not necessitate that the injury be the sole cause of the need for treatment, "but is sufficient if the labor being performed in the employment is a material, contributing cause which leads to the unfortunate result." *Olson*, 222 Or at 414-15. The material contributing cause standard remains the accepted test for establishing the existence of a compensable injury under ORS 656.005(7)(a). *See Schleiss*, 354 Or at 643 (describing the test for establishing a compensable injury); *see also Hopkins v. SAIF Corp.*, 349 Or 348, 351, 245 P3d 90 (2010) (same).

"Impairment" is specifically defined as "the loss of use or function of a body part or system *due to* the compensable industrial injury." ORS 656.214(1)(a) (emphasis added). "Permanent partial disability" is "[p]ermanent impairment resulting from the compensable industrial injury or occupational disease." ORS 656.214(1)(c). Thus, combining those definitions, an award for permanent partial disability is based on permanent loss of use or function of a body part or system resulting from the compensable industrial injury. Impairment benefits awarded under the workers' compensation statutes, including benefits for permanent partial disability, are expressed as a percentage of a whole person and calculated according to the process laid out in the workers' compensation statutes and accompanying administrative rules. *See generally* ORS 656.214(3) (stating that impairment benefits "shall be expressed as a percentage of the whole person" and laying out procedures for calculation of those benefits).

We have previously addressed the meaning of "impairment," the causes that contribute to it, and how impairment impacts the calculation of awards of permanent partial disability in several cases. Although those cases do not answer all the questions presented in this case, each provides insight and context for understanding our decision today. We review those cases now.

1.  Barrett I *and* Barrett II

This court considered the relationship between impairment and the causes contributing to it in a case that explained the method for calculating awards for permanent partial disability under ORS 656.214. *See Barrett v. D & H Drywall*, 300 Or 325, 709 P2d 1083 (1985) (*Barrett I*), *adh'd to on recons*, 300 Or 553, 715 P2d 90 (1986) (*Barrett II*). In the *Barrett* cases, the claimant injured his back after falling from a ladder at work. *Barrett I*, 300 Or at 327. The work injury combined with a preexisting, asymptomatic arthritic condition in the claimant's low back. *Id.* The employer accepted responsibility for the portion of the back injury that resulted from the work accident but denied liability for the preexisting arthritic condition under ORS 656.214

(1985).[4] This court held that the calculation of permanent partial disability should consider impairment related to the claimant's preexisting osteoarthritis, explaining that

> "[t]he oft-expressed maxim still applies: An employer takes the worker as he finds him. Whether the worker suffers greater permanent partial disability (measured by the loss of earning capacity) because of a preexisting condition is irrelevant in deciding the amount of loss of earning capacity caused by a new injury superimposed on a preexisting condition."

*Barrett I*, 300 Or at 328 (footnote omitted). That holding acknowledged that it is difficult, if not impossible at times, to separate out the individual components of impairment when a compensable injury is superimposed on a preexisting condition. *Id.* at 331. Accordingly, compensation for a claimant's impairment is calculated considering the full symptoms caused by the compensable injury. *Id.*

Following a petition for reconsideration in that case, we clarified that impairment "due to the compensable injury" included impairment that occurred because the compensable injury triggered a preexisting asymptomatic condition to become symptomatic. *Barrett II*, 300 Or at 555-56. Specifically, we explained that the permanent partial disability award should not directly compensate the claimant for the osteoarthritis itself but, if the work injury caused a preexisting "disease to produce symptoms where none existed immediately prior to the accident," and "those symptoms produced loss-of-earning capacity," then the workers' compensation statutes, as they existed at that time, required that the claimant be compensated for that loss. *Id.*

This court later summarized the holding of the *Barrett* cases clearly and succinctly: "*Barrett* determined that the worker's permanent partial disability was the full amount of his new impairment, without reduction for the portion of that loss attributable to his preexisting condition." *Caren*, 365 Or at 476. That explanation matches the rule

---

[4] Under ORS 656.214(5) (1985), which was in place at the time the *Barrett* cases were decided, the criterion for determining a rating of disability for permanent partial disability was "the permanent loss of earning capacity due to the compensable injury."

proposed by claimant in this case, but our inquiry cannot end there. As SAIF points out, the legislature overhauled a large portion of the workers' compensation statutes after the *Barrett* cases were decided and the holding of those cases do not carry the same relevance today as when they were decided. This court has acknowledged as much in *Schleiss*, a case presenting similar questions:

> "*Barrett* is of doubtful utility here for another fundamental reason. When *Barrett* was decided in 1985, no statute addressed the role in [permanent partial disability] award determinations of impairment that is attributable to a preexisting condition that has combined with a compensable injury. *** However, the workers' compensation statutes now provide specific standards for determining how and when conditions that 'combine' workplace injuries with preexisting conditions are compensable and how and when impairment caused by such conditions can be apportioned. In light of those statutory changes, impairment attributable to a legally cognizable preexisting condition now must be apportioned in a [permanent partial disability] award where a combined condition has been established, and the compensable injury is no longer the major contributing cause of the impairment or the need for medical treatment."

*Schleiss*, 354 Or at 649-50. Additionally, even if the underlying proposition of *Barrett* remains the same, those cases only answer part of the question posed here.

    2.   Schleiss

      As noted, after *Barrett*—and, in part, because of *Barrett*—the legislature significantly revised the statutory scheme of Oregon's workers' compensation system during a 1990 special legislative session. *See Caren*, 365 Or at 476; *Brown,* 361 Or at 265-66 (describing the 1990 special session and the overhaul of the workers' compensation statutes that resulted); *see also* Or Laws 1990, ch 2, § 3 (Spec Sess) (detailing the changes made during the legislative session). One of the legislative changes that came out of that session was the creation of the "combined condition" framework. *See* Or Laws 1990, ch 2, § 3 (Spec Sess) (detailing the changes made during the legislative session). The 1990 legislation amended the definition of "compensable injury" to specify, that when an "otherwise compensable injury" combines with

a preexisting condition to create a new condition or need for treatment, the combined condition "is compensable only if *** the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition." *See* ORS 656.005(7)(a)(B). As we would later explain, that amendment altered the material contributing cause standard by creating a major contributing cause standard for combined conditions. The decisions of this court that followed the 1990 legislative overhaul of the workers' compensation statutes provide additional context for us in evaluating this case.

This court was presented with its first opportunity to clarify the meaning of "impairment" and its contributing causes under the revised workers' compensation statutory scheme in *Schleiss*. There, the claimant injured his back at work and the insurer accepted his claim for a lumbar strain. *Schleiss*, 354 Or at 639. At claim closure, the injured worker claimed new impairment caused in part by the workplace injury but also in part by a preexisting degenerative joint disease and accelerated aging due to smoking. *Id.* at 639-40.

Mirroring part of the arguments made in this case, the claimant in *Schleiss* challenged the award of permanent partial disability. The claimant argued that because "the compensable injury materially contributed to the total impairment, all the impairment is 'due to' the compensable injury," and should result in an award covering the full measure of impairment without a reduction or apportionment based on the estimated contribution of the preexisting conditions. *Id.* at 643. The insurer rejected that argument and instead asserted that the phrase "due to" referenced "the percentage of the worker's total impairment that was caused by the compensable injury, so that the percentage of the total impairment 'due to' any other contributing cause must be excluded from the award." *Id.* There, we observed that,

"[o]n the surface of things, either of those proposed meanings is plausible. The dictionary definition of 'due to' is 'because of.' *Webster's Third New Int'l Dictionary* 699 (unabridged ed 2002). Consistently with that meaning, as

claimant asserts, 'due to' could mean that a compensable injury must have materially contributed to a worker's total impairment; alternatively, as SAIF contends, 'due to' could refer instead to the percentage of a worker's total impairment to which the compensable injury contributed."

*Id*. The insurer in that case also argued that the "claimant had the burden of asserting and proving" a compensable combined condition if the "claimant wished to have an impairment caused in part by a preexisting condition" included in the calculation of his permanent partial disability award. *Id*. at 651.

Following a detailed examination of the surrounding statutory framework, and the meaning of "due to" within the context of those statutes, this court concluded that it was not necessary to resolve the dispute between the parties concerning the meaning of "due to" within the newly enacted combined condition framework because there was "no evidence in the record that either of the contributing causes on which the medical arbiter and the board relied [was] a legally cognizable preexisting condition that would authorize the apportionment of claimant's impairment in a combined condition claim." *Schleiss*, 354 Or at 651. As we explained, if a preexisting contributing cause of the injury is not a legally cognizable "preexisting condition"—defined as "any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that *** the worker has been diagnosed with the condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis," ORS 656.005(24)(a)—then it does not qualify for apportionment under the combined condition framework. *Schleiss*, 354 Or at 651. Accordingly, the claimant's case was remanded to the board for reconsideration under the material contributing cause standard discussed above. *See id*. at 655 ("The decision of the Court of Appeals is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.").

Our holding in *Schleiss* reflects the principle that, even after the legislature created the combined condition framework, apportionment is only appropriate in cases that

fall under the ambit of the combined condition process—
*i.e.*, cases presenting an otherwise compensable condition
that combines with a legally cognizable preexisting con-
dition. We understand *Schleiss* to confirm that where no
legally cognizable preexisting condition exists, the general
rule remains that, where an accepted, compensable injury is
a *material contributing cause* of the claimant's impairment,
then the claimant is entitled to the full measure of com-
pensation for that impairment, not just the percentage of
impairment caused solely by the compensable injury. That
general rule, initially announced in the *Barrett* cases, was
at least implicitly confirmed again in *Schleiss*.

　　3.　Caren

　　　　Not long after *Schleiss*, this court was presented
with an opportunity to address an actual combined condi-
tion. In *Caren*, the claimant injured her back at work and
the employer issued a notice of acceptance that listed the
accepted condition as a "lumbar strain." 365 Or at 470. During
claim closure, after the claimant had received treatment for
her injury, the physician determined that the claimant suf-
fered from a diminished range of motion in her lumbar area.
*Id.* at 471. That same physician also noted that the claimant
appeared to suffer from preexisting arthritis in the lumbar
spine and attributed part of the claimant's impairment to
the preexisting arthritis, but part to the accepted workplace
injury.[5] *Id.* The claimant never requested, and the employer
never considered, apportionment according to the combined
condition process. *Id.* Nonetheless, the claimant's perma-
nent partial disability award was reduced according to the
percentage of her impairment that was determined to be
caused by her preexisting arthritis. *Id.*

　　　　This court allowed review of that case to determine
whether the legislature intended the "combined condition"
process to modify the rule for calculating permanent partial

---

[5] Initially, the physician and an evaluator attributed the diminished lum-
bar range of motion at 50 percent the result of the preexisting arthritis and
50 percent the result of the workplace injury. *Caren*, 365 Or at 471. The DCBS
medical arbiters later estimated that the claimant's arthritis was actually
responsible for 70 percent of the impairment to her lumbar range of motion.
*Id.* That estimate was used to calculate, and reduce accordingly, the claimant's
award for permanent partial disability. *Id.*

disability—the material contributing cause rule—in every case where the employer identifies a claimant's preexisting condition, or if the apportionment benefits are limited to instances where a specific combined condition is identified, formally denied, and closed according to the statutory process. *Caren*, 365 Or at 480. In other words, this court sought to determine whether apportionment was a limited exception, available only when the claimant or employer follows the combined condition process, or if that limited liability is also available where a combined condition is denied.

To answer that question, this court examined the text, context, and legislative history of the statute that lays out the process for apportionment of a combined condition, ORS 656.268(1). *See Caren*, 365 Or at 472. ORS 656.268(1) provides that an insurer or self-insured employer is required to close a claimant's claim and determine the extent of permanent partial disability when

> "[t]he accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated."

This court explained that the traditional method for calculating a permanent partial disability award before examining how, and under what conditions, the combined condition framework changes that process. Ultimately, this court concluded that

> "the legislature intended the combined condition process to create an exception to the general rule that employers pay compensation for the full measure of the workers' permanent impairment if the impairment as a whole is caused in material part by the compensable injury, and *** that the legislature intended that employers would obtain the benefit of that exception only by issuing a denial of a 'combined condition' and following the process that the legislature has specifically provided in ORS 656.268(1)(b) for reducing the workers' permanent partial disability."

*Caren*, 365 Or at 473. As this court understood the legislative amendments creating the combined condition process, the changed statutory provisions were intended to limit an employer's liability for preexisting conditions, but only where the employer follows the specific process laid out in ORS 656.268(1)(b) for reducing a worker's permanent partial disability award. *Caren*, 365 Or at 487. In short, we concluded that the legislature intended apportionment in combined condition cases to be a limited exception to the general rule that a worker is entitled to compensation for the full measure of the workers' impairment where the impairment is caused in material part by the compensable injury.

B.  *Application of* Barrett*,* Schleiss*, and* Caren *to This Case*

        Each of those cases—*Barrett*, *Schleiss*, and *Caren*—provides insight into our past interpretations of the phrase "due to the compensable injury" and the definition of "impairment" in ORS 656.214. There are two primary propositions that those cases provide that guide us here. First, *Barrett* and *Schleiss* stand for the basic, underlying rule that, when an accepted, compensable injury is a material contributing cause of the claimant's impairment, then the claimant is entitled to the full measure of compensation for that impairment. *See Barrett II*, 300 Or at 555-56; *Schleiss*, 354 Or at 651. That general rule remains true today. The second proposition that bears emphasis is that apportionment may only be used by an insurer to reduce benefits for impairment where the legislature has identified an exception to, or limitation on, the material contributing cause standard. An example of such an exception occurs where the impairment is caused by a legally cognizable preexisting condition that the insurer formally denied as a combined condition prior to claim closure. *See Caren*, 365 Or at 487 ("We conclude that employers obtain the benefit of that exception only by issuing a denial of the 'combined condition' and following the process that the legislature has specifically provided in ORS 656.268(1)(b) for reducing the worker's permanent partial disability."). Both of those rules are consistent with our understanding of the workers' compensation scheme, flow from our prior interpretations of ORS 656.214, and provide a preliminary basis upon which we analyze this case.

Here, the board upheld SAIF's determination that claimant was not entitled to an award of permanent partial disability for any of her impairment that was caused by the denied conditions. That approach effectively reduced claimant's award in the same way that apportionment would reduce her award in a combined condition case. As explained above, claimant received an award for seven percent whole person impairment for the injuries to her left hand. Within that value, the impairment for the loss of grip strength was apportioned only 50 percent to the accepted compensable hand claim. The award for permanent partial disability was reduced accordingly. Because the board's decision utilized a method to apportion, and ultimately reduced claimant's impairment award, and because we have previously explained that apportionment is only authorized by statute as a limited exception to the general rule that a claimant is entitled to the full measure of impairment, available only when specific conditions are met, we first address whether the combined condition statutory framework allowed for apportionment in this case.

As we explained in *Caren*, and have reiterated here, an employer or insurer may only avail itself of the ability to apportion awards in combined condition cases. To qualify for the limited combined condition exception, there must be a legally cognizable preexisting condition that has combined with the otherwise compensable injury. *See Caren*, 365 Or at 483 ("'[L]egally cognizable preexisting condition is only one requirement for reducing the worker's impairment under ORS 656.268(1)(b) to account for a combined condition; it also requires that the condition has combined with the 'otherwise compensable injury' and that the employer can meet 'its burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition.'" (First quoting ORS 656.005(7)(a)(B); then quoting ORS 656.266(2)(a))). As a reminder, a legally cognizable "preexisting condition" is "any injury, disease, congenital abnormality, personality disorder, or similar condition that contributes to disability or need for treatment, provided that *** the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless

of diagnosis." ORS 656.005(24)(a). Here, both parties agree that this case does not present a combined condition and that this court's analysis in *Caren* is inapplicable.[6] There is no combined condition presented in this case because there was no evidence in the record to suggest that claimant's denied left rotator cuff tear was previously diagnosed or treated prior to the workplace injury.

As explained, usually, when no combined condition exists, the general rule that a claimant is entitled to the full measure of impairment where the accepted condition is a material contributing cause of the disability applies. The text of ORS 656.214, and our prior decisions discussed above, support that proposition. That leaves two questions that must be answered in order to resolve this case: (1) whether the full measure of impairment is calculated as the percentage of the impairment that is directly caused by the compensable injury or as a whole and (2) whether there is a limited exception to the general rule that allows for apportionment when there is a specific, previously denied condition. Those questions are left unanswered by our previous decisions and are implicated directly in this case.

## C.  *Further Analysis*

We begin by addressing the first question. Here, the parties disagree about the meaning of "due to" within the definition of impairment. SAIF argues that the phrase "due to" within the definition of impairment limits the employer's liability to only compensate the claimant for impairment that is caused by the compensable injury. Claimant, on the other hand, maintains that the workers' compensation statutes, and our prior cases interpreting those statutes, make

---

[6] The Court of Appeals also acknowledged that *Caren* was not directly applicable to this case: "*Caren* did not explicitly address the issue presented here—whether a worker should be compensated for the 'full measure' of impairment caused in material part by a work injury in combination with a noncognizable preexisting condition that the employer had previously denied outright." *Johnson II*, 307 Or App at 4. That court, nonetheless, used this court's reasoning in *Caren* to conclude that claimant was entitled to the full measure of impairment for her injury. *Id.* at 5 ("Although SAIF denied claimant's shoulder condition, SAIF has not denied the combined condition that was identified by the medical arbiter and that resulted in claimant's range-of-motion impairment in her hand. Accordingly, under *Caren*, claimant is entitled to be awarded the 'full measure' of impairment.").

clear that a worker is entitled to the *full measure* of impairment so long as the worker's accepted and compensable injury is a material contributing cause of the impairment. That question was deliberately left unanswered in *Schleiss*. In this case, we must answer that question with regard to a denied condition that arose with the compensable injury.

Here, claimant injured her left hand in a work-related incident. After investigating and evaluating the claim, SAIF determined that it was compensable and issued a notice of acceptance. Later, claimant sought to amend the claim and a portion of that modification—the left rotator cuff tear, left upper arm and elbow sprain, and cervical disc disorder—was denied as not compensably related to the accepted workplace injury. Accepting the conclusion that the denied conditions were not compensably related to the workplace injury,[7] we first note that it is correct that impairment values that stem solely for those conditions should not lead to an award of permanent partial disability. In other words, if claimant sought benefits for the left rotator cuff tear, left upper arm and elbow sprain, and cervical disc disorder, there would be no compensation. Those conditions were denied. That principle alone, however, does not sufficiently answer the question posed here. The impairment at issue in this case is not the damage to the rotator cuff tear, upper arm and elbow, or cervical disc *per se*—those are claimant's noncompensable conditions. The impairment at issue is the loss of grip strength in claimant's left hand. The question is whether claimant is entitled to the full measure of *that* impairment where the accepted conditions—the injuries to claimant's left fingers and sprains to her left shoulder area—are a material contributing cause of the impairment as a whole. As we understand the statutes and the record in this case, the answer is yes.

In *Barrett I*, this court acknowledged the longstanding guideline that an employer takes the worker as he finds him. 300 Or at 328; *see also Surratt v. Gunderson Bros.*, 259 Or 65, 74, 485 P2d 410 (1971) (emphasizing that

---

[7] The denial of the left rotator cuff tear, left upper arm and elbow sprain, and cervical disc disorder is not in dispute in this case, other than the impact of that denial on the calculation of claimant's award for permanent partial disability.

"the individual workman is taken as the industrial accident finds him with all his apparent defects"); *Keefer v. State Indus. Acc. Commission*, 171 Or 405, 412, 135 P2d 806 (1943) ("The Oregon Workmen's Compensation Law, as that of many of the other states prescribes no standard of physical fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health."). Although the legislature significantly overhauled the workers' compensation statutes following our decision in the *Barrett* cases, we do not understand those changes to alter that tenet. Instead, those changes identified circumstances in which an employer's liability for impairment can be limited because of a legally cognizable preexisting condition that combines with a compensable condition. Outside of those circumstances, however, an injured worker is entitled to compensation for the full measure of their impairment that is caused in material part by the compensable injury.

We pause here briefly, before concluding, to address SAIF's proposed interpretation of the workers' compensation statutes that discuss denied conditions. SAIF, and *amici* supporting SAIF, maintain that a denial has the legal effect of establishing that the specific denied condition is not eligible for any benefits. SAIF argues that the Court of Appeals' decision in this case forces insurers to pay benefits for denied conditions and instead advocates that this court recognize an additional exception to the rule announced above.

We agree with SAIF's contention that benefits are not intended to flow directly from denied conditions. ORS 656.262(2) makes clear that compensation for any claim shall be paid promptly upon an employer's notice or knowledge of the claim, "*except where the right to compensation is denied by the insurer or self-insured employer.*" (Emphasis added.) The proposition that benefits do not flow from denied conditions is also supported by ORS 656.268(15), which states that "[c]onditions that are direct medical sequelae to the original accepted condition shall be included in rating permanent disability of the claim *unless they have been specifically denied.*" (Emphasis added.) Even in the context of awarding attorney fees in workers' compensation cases, the legislature has recognized that a denied claim is "[a] claim

for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation[.]" *See* ORS 656.386(1)(b)(A) (defining a denied claim as it relates to awards for attorney fees).

The proposition that compensation should not flow from a denied claim is also clear in the process specifically laid out for claim closure and rating of permanent disability. Under ORS 656.262(7)(c),

> "[w]hen an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. *** Any objection to the updated notice or appeal of denied conditions shall not delay claim closure pursuant to ORS 656.268. If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

By the terms of that statute, the updated notice of acceptance at claim closure defines the compensable conditions and specifically separates out a process for appeal of a denied condition that is not subject to compensation. The claim closure and rating of permanent disability are expected to proceed without the denied conditions. As we understand that statute, there is no point at which the denied condition would be subject to compensation unless, and until, it is determined to be compensable.

We do not read any of those statutes, however, to create another limited exception that authorizes apportionment even where the accepted compensable condition is a material contributing cause of the impairment. Unlike the combined condition process, we do not understand the legislature to have adopted or recognized any process that authorizes apportionment of a claim in cases involving partial denials. Certainly, we agree that, if a denied condition is the *sole* cause of a claimant's impairment, or if the accepted condition is not even a material cause of the impairment, then a denied condition operates to cut off compensation.

But, if the material contributing cause standard is met as to the accepted condition, the full value of impairment is due.

Our decision today acknowledges that an individual's impairment may have more than one contributing factor. Claimant's situation demonstrates why the material contributing cause standard exists. Although it is true that claimant's denied conditions—the left rotator cuff tear, left upper arm and elbow sprain, and cervical disc disorder—contributed to her overall loss of grip strength, that impairment was caused in material part by the accepted, compensable claim that arose from the work-related incident. Claimant was entitled to the full measure of impairment for her loss of grip strength and the permanent partial disability award should not have been reduced due to apportionment.

## III. CONCLUSION

Because we agree with claimant that ORS 656.214 entitles an injured worker to compensation for all of the impairment due in material part to, and resulting in material part from, the compensable injury, and because the compensable injury was found to be a material cause of claimant's impairment, we find that claimant was entitled to the full value of her total impairment, including the portion of her loss of grip strength that may have been attributed to the denied conditions. Apportionment of claimant's award for permanent partial disability, based on the percentage of contribution to impairment by the compensable condition, was not appropriate in this case. Accordingly, the board's decision to reduce claimant's award based on the extent to which the denied shoulder condition contributed to the loss of grip strength was incorrect.

For the reasons discussed above, we agree with the Court of Appeals that, absent a specifically identified combined condition, claimant is entitled to the full measure of impairment for her condition.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is reversed.